08-1769-cv
Tracy v. Freshwater

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2008

Argued: April 17, 2009                     Decided: October 14, 2010

Docket No. 08-1769-cv

_____

PATRICK TRACY,

*Plaintiff-Counter-Defendant-Appellant*,

-v.-

PARKER J. FRESHWATER, TOMPKINS COUNTY, and PETER MESKILL

*Defendants-Counter-Claimants-Appellees*.

_____

Before:        SACK, LIVINGSTON, *Circuit Judges*, VITALIANO,[*] *District Judge*.

Plaintiff-Counter-Defendant-Appellant Patrick Tracy appeals from decisions of the United

States District Court for the Northern District of New York granting the motion for summary

judgment filed by Defendants-Counter-Claimants-Appellees on the ground of qualified immunity

(Munson, *J.*) and denying Tracy's subsequent motion for reconsideration (McCurn, *J.*).  Tracy

contends on appeal that the district court erred in concluding that he had not raised a genuine issue

_____

[*] The Honorable Eric N. Vitaliano, District Judge of the United States District Court for
the Eastern District of New York, sitting by designation.

of material fact as to whether Defendant-Counter-Claimant-Appellee Parker Freshwater, a deputy sheriff in the Tompkins County Sheriff's Department, used unreasonable force in the course of arresting him. He further argues that the district court acted improperly when it endorsed a general withdrawal from Tracy of the special solicitude ordinarily afforded to *pro se* litigants. In light of conflicting evidence regarding whether Officer Freshwater used pepper spray on Tracy before or after fully restraining him, we conclude that a material issue of fact remains in dispute with respect to that claim. Moreover, we conclude that the general withdrawal of special solicitude amounted to an abuse of discretion in the circumstances of this case, even though a more limited withdrawal of solicitude may well have been warranted.

Vacated and remanded.

> MICHELLE GHALI[**] and STUART YOUNGS[**] (JON ROMBERG, *of counsel*), Center for Social Justice, Seton Hall University School of Law, Newark, New Jersey, *for Plaintiff-Counter-Defendant-Appellant*.
>
> JONATHAN WOOD, County Attorney, Tompkins County Attorney's Office, Ithaca, New York, *for Defendants-Counter-Claimants-Appellees*.

DEBRA ANN LIVINGSTON, *Circuit Judge*:

In this appeal, Plaintiff-Counter-Defendant-Appellant Patrick Tracy challenges the decisions of the United States District Court for the Northern District of New York granting the motion for summary judgment filed by Defendants-Counter-Claimants-Appellees on the ground of qualified immunity (Munson, *J.*) and denying Tracy's motion for reconsideration (McCurn, *J.*). Tracy

---

[**] Appearing pursuant to 2d Cir. R. 46.1(e).

primarily argues that the district court erred in concluding that he had not raised a genuine issue of material fact as to whether, in the course of arresting him, Defendant-Counter-Claimant-Appellee Parker Freshwater, a deputy sheriff in the Tompkins County Sheriff's Department, used unreasonable force in violation of the Fourth Amendment. We conclude that the majority of Tracy's claims fail as a matter of law and that summary judgment was properly granted on them. However, because we find that issues of material fact remain in dispute with respect to one claim – Tracy's excessive force claim based on Freshwater's use of pepper spray – and that Freshwater is not entitled to qualified immunity with respect to that claim as stated by appellant, we vacate the district court's grant of summary judgment and remand for further proceedings consistent with this conclusion.

Tracy separately asserts that the district court acted improperly when it endorsed a general withdrawal from him of the special solicitude that federal courts ordinarily afford to *pro se* litigants. In *Sledge v. Kooi*, 564 F.3d 105, 109-10 (2d Cir. 2009) (per curiam), we suggested that while it is appropriate to charge an experienced *pro se* litigant with knowledge of, and therefore to withdraw special status in relation to, particular requirements of the legal system with which he is familiar, a general withdrawal of the solicitude ordinarily afforded *pro se* litigants is inappropriate absent a showing that the particular litigant has acquired the experience necessary to deal generally with all aspects of his case. We conclude that the district court's general withdrawal of solicitude here amounted to an abuse of discretion, even though a more limited withdrawal of solicitude in relation to the requirements of opposing a motion for summary judgment may well have been warranted.

## BACKGROUND

The following facts are drawn from the record on appeal and, unless otherwise noted, are

3

construed in the light most favorable to Tracy. On the evening of April 8, 2000, Tracy was driving through the town of Danby, New York, located in Tompkins County. The weather was bad – darkness had fallen, it was snowing, and the wind was gusting. Officer Freshwater, observing traffic from a public parking lot, saw Tracy's car, noticed that the windows were covered with snow which likely impaired the driver's ability to see, and pulled Tracy over.[1] Officer Freshwater asked Tracy for his license and registration and Tracy told him that he did not have them in his possession. Officer Freshwater asked Tracy to exit the car and clean off the windows while he ran a check on the car's license plate number. After running this check, which revealed that the car was registered to Beverly M. Ruggles, Officer Freshwater approached the car and began to question Tracy, who, having finished cleaning the windows, was once again seated inside the vehicle.

Officer Freshwater first asked whether the car was registered in the name of Ms. Ruggles, to which Tracy responded affirmatively. He next asked Tracy for his name, receiving the answer "Seth A. Ruggles." After some further questioning regarding his date of birth, Tracy admitted that he was not, in fact, Seth Ruggles. Officer Freshwater then asked Tracy for his real name. Tracy professes not to have understood this question, but admits that after hearing "something about a name," he stated "Jeff A. Kerns." Following this exchange, Officer Freshwater ordered Tracy to exit his car, and Tracy did so.

Officer Freshwater affirms that by this time he strongly suspected that Tracy might be

_____

[1] Officer Freshwater also indicated that one of Tracy's headlights was out. Although Tracy appears to accept the truth of this assertion on appeal, he purported to challenge it below. Resolution of this factual dispute is not necessary to our disposition of this case and, accordingly, we do not consider the issue further.

4

wanted in connection with a criminal offense. As Tracy stood outside his car, Officer Freshwater, intending to pat him down for weapons and then to arrest him, ordered Tracy to place his hands on top of his head. According to Tracy, he obeyed this order. Officer Freshwater then demanded that Tracy, who at that point was facing him, turn around. Tracy alleges that he began to do so but, before he could fully comply, he slipped on a patch of ice and thereafter grabbed the car to prevent himself from falling. According to Tracy, Officer Freshwater then struck him twice with a metal flashlight. Tracy contends that he then ran in the direction of Officer Freshwater's patrol car, Officer Freshwater grabbed him, and the two struggled. Although Tracy did not attempt to strike Officer Freshwater, he asserts Officer Freshwater hit him twice more with the flashlight. Officer Freshwater alleges, to the contrary, that after he directed Tracy to turn around and place his hands on the top of his head, Tracy began to run toward him and the roadway. Officer Freshwater grabbed Tracy and hit him with the flashlight, he says, only after Tracy had attempted to punch him.

Both parties agree that Tracy eventually broke free and began to run from Officer Freshwater. Before Tracy could get far, however, he slipped and fell to the ground, after which Officer Freshwater jumped on him. Tracy immediately felt severe pain. According to Tracy, while lying on top of Tracy, Officer Freshwater screamed at him and immediately placed one of Tracy's hands in handcuffs. Tracy's other hand, however, was pinned beneath his body. Despite this difficulty, Officer Freshwater demanded repeatedly and stridently that Tracy present this hand so that it might also be placed in handcuffs. Eventually, Tracy was able to work his hand free, at which point Officer Freshwater placed it in handcuffs as well. While he was attempting to extract his hand from under his body, Tracy contends that he expressly told Officer Freshwater that he was not

5

resisting. He asserts, moreover, that after he was fully handcuffed, Officer Freshwater, while continuing to yell at him, sprayed his face with pepper spray from a distance of only a few inches and then pushed it into the muddy ground. Officer Freshwater alleges, to the contrary, that he pepper-sprayed Tracy while Tracy was actively continuing to resist.

While Officer Freshwater was lying on top of Tracy, Freshwater attempted to call for help on his portable radio. The radio, however, malfunctioned and Officer Freshwater received no response.[2] He then attempted to move Tracy. Tracy contends that Officer Freshwater angrily ordered him to get up and persisted in that demand after being told that Tracy was in pain. Tracy alleges that when he continued to protest that he was injured, Officer Freshwater grabbed him by his arms and hauled him to his feet. Officer Freshwater asserts, in contrast, that he assisted Tracy "by picking him up under his arms from behind." Both parties agree that as Tracy was made to stand, his body made a distinct popping noise. Tracy states that he immediately felt excruciating pain. According to Tracy, although he again indicated that he was injured and needed medical attention, Officer Freshwater held him up by his hands and forced him to walk the roughly twenty feet to the patrol car. Once they reached the patrol car, Officer Freshwater put Tracy in the back seat and used the car's radio to call for backup and medical personnel. Shortly afterwards, an ambulance arrived and took Tracy to a nearby hospital, where he received medical treatment, primarily for a fracture dislocation of his hip. Tracy was subsequently transferred to a larger hospital, where he

---

[2] Tracy does not directly mention these actions. His statements, however, also do not directly dispute Officer Freshwater's assertion that he attempted to call for backup from his portable radio. Indeed, Tracy's deposition testimony that Officer Freshwater "was fiddling around with something" while he lay on top of Tracy appears to corroborate Officer Freshwater's account of this portion of the incident.

6

underwent at least one extensive surgical procedure as the result of the hip injury.

An examination of Tracy's fingerprints revealed his true identity, along with the fact that he had a criminal history and, indeed, was then the subject of an outstanding arrest warrant for federal drug charges. Tracy was then charged with several additional state law offenses stemming from his altercation with Officer Freshwater, and, after a jury trial, was convicted of resisting arrest in violation of New York Penal Law § 205.30 and criminal impersonation in the second degree in violation of New York Penal Law § 190.25.[3] Tracy has also since been convicted of the federal drug charges for which he was sentenced principally to 144 months' imprisonment.

Tracy thereafter initiated the instant case, asserting, *inter alia*, a claim against Officer Freshwater pursuant to 42 U.S.C. § 1983 for the use of excessive force in violation of the Fourth Amendment.[4] After extended motion practice, which included some thirty-six motions filed by Tracy, proceeding *pro se*, the magistrate judge assigned to the case issued a report and recommendation urging that a motion for summary judgment with regard to all of Tracy's claims filed by Defendants-Counter-Claimants-Appellees be granted in full. The magistrate judge, after noting that Tracy had participated in at least ten previous federal and state actions, had engaged in

---

[3] Tracy was also convicted of Criminal Possession of a Controlled Substance in the Fourth Degree, New York Penal Law § 220.09, a Class C Felony under New York law, and Criminal Possession of Marihuana in the Fourth Degree, New York Penal Law § 221.15, a Class A Misdemeanor, both in connection with illegal substances recovered from him as a result of his encounter with Officer Freshwater.

[4] Tracy also asserted a claim for common-law battery against Officer Freshwater, as well as a variety of claims against the other Defendants-Counter-Claimants-Appellees. In their answer, Defendants-Counter-Claimants-Appellees asserted a counterclaim for common-law battery against Tracy. As none of these claims are renewed on appeal, however, we do not consider them here.

substantial motion practice in this action, and had demonstrated substantial competence in the course of that motion practice, first recommended that Tracy should be denied the solicitude ordinarily afforded by federal courts to *pro se* litigants.  Turning then to Tracy's substantive claims, the magistrate judge concluded with regard to the excessive force claims at issue in this appeal that, even viewing the evidence in the light most favorable to Tracy, Officer Freshwater was entitled to qualified immunity as his actions were objectively reasonable and, accordingly, did not amount to a constitutional violation. Over Tracy's objection, the district court adopted the report and recommendation in full and judgment was entered in favor of Defendants-Counter-Claimants-Appellees.  Tracy subsequently filed a motion for reconsideration, which the district court denied on the ground that it merely sought to relitigate the same issues already decided in the previous order.  This appeal followed.

**DISCUSSION**

**A.    Excessive Force**

Tracy first challenges the district court's conclusion that Freshwater was entitled to summary judgment on all of Tracy's excessive force claims.   We review a grant of summary judgment *de novo*, and in so doing, we construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  *See Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 427 (2d Cir. 2009); *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007).   Summary judgment is warranted only where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2);

8

*see Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). "A fact is material when it might affect the outcome of the suit under governing law." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks and citations omitted).

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kelsey v. County of Schoharie*, 567 F.3d 54, 60-61 (2d Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Accordingly, when a defendant official invokes qualified immunity as a defense in order to support a motion for summary judgment, a court must consider two questions: (1) whether the evidence, viewed in the light most favorable to the plaintiff, makes out a violation of a statutory or constitutional right, and (2) whether that right was clearly established at the time of the alleged violation. *See Gilles v. Repicky*, 511 F.3d 239, 243-44 (2d Cir. 2007); *see also Saucier v. Katz*, 533 U.S. 194, 208 (2001), *modified by Pearson v. Callahan*, – U.S. –, 129 S. Ct. 808 (2009). While the Supreme Court has recently made clear that we may "exercise [our] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first," *Pearson*, 129 S.Ct. at 818, we begin, as the district court did, with the first. *Cf. id.* (suggesting that the traditional sequence is appropriate where "discussion of why the relevant facts do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all").

The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest. *See Graham v. Connor*, 490 U.S. 386, 395

9

(1989). Because "[t]he Fourth Amendment test of reasonableness 'is one of objective reasonableness,'" *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005) (quoting *Graham*, 490 U.S. at 399), the inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004). In conducting that balancing, we are guided by consideration of at least three factors: (1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396; *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006).

However, in doing so, we are careful to evaluate the record "'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Jones*, 465 F.3d at 61 (quoting *Graham*, 490 U.S. at 396). Morever, we are required to "make 'allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.'" *Id.* (quoting *Graham*, 490 U.S. at 397). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 397 (internal quotations and citation omitted).

Tracy's complaint can be read to allege that Officer Freshwater exceeded Fourth Amendment constraints in four different ways: first, by striking Tracy with a flashlight several times; second, by jumping on Tracy as Tracy, by his own admission, attempted to flee from Freshwater; third, by

10

spraying Tracy with pepper spray after Tracy had already been placed in handcuffs; and fourth, by forcibly moving Tracy from the ground to the police car despite the fact that Tracy had told Freshwater that he was in pain and could not move. As noted above, Freshwater disputes Tracy's account of the facts underlying at least some of those claims. However, the district court concluded that none of the four claims survived the motion for summary judgment because, even if any factual disputes were resolved in Tracy's favor, none of the alleged conduct constituted unreasonable force – and thus a constitutional violation for purposes of the qualified immunity analysis – as a matter of law. We agree with respect to claims one, two, and four.

With respect to the first claim, which centers on Freshwater's use of his flashlight, we agree with the reasoning of the magistrate judge and conclude that even if Tracy's account is credited, Officer Freshwater's use of force was reasonable. From Freshwater's perspective, a suspect he strongly – and correctly – presumed to be a fugitive from the law, made a quick and sudden movement as Freshwater attempted to effect an arrest without the assistance of other officers. His decision to use his flashlight to protect himself and subdue an arrestee he perceived to be actively resisting was therefore a reasonable response. Consideration of the three *Graham* factors only further supports that finding. First, the scope of crime in question was not simply driving without a license or criminal impersonation but was unknown and potentially far more serious. As noted, Freshwater had ample basis to presume that Tracy was at that time a fugitive seeking to evade capture. Second, the risk posed to officer safety appeared to be both real and imminent. It is uncontested that Freshwater was operating without back up on the side of a road at night and in bad weather. Accordingly, what appeared to be Tracy's attempt to flee or fight back posed a potentially

serious and imminent risk to Freshwater's safety. Third, from Freshwater's perspective, Tracy appeared to fail to comply with a direct order and to instead actively resist arrest, thus necessitating a forceful response.

Tracy contends that he merely slipped on the ice, and, as such, Freshwater's use of force was both unnecessary and unreasonable. We reject that argument, because our focus is not on Tracy's motivations but instead on the sequence of events from the perspective of a reasonable officer at the scene. In finding that such an officer would reasonably have construed Tracy's conduct as intentional and threatening, we emphasize that the events in question took place at night and during inclement weather which undoubtedly reduced visibility and made all the more reasonable Freshwater's "split-second judgment" that Tracy's sudden movement constituted non-compliant and threatening behavior. *Graham*, 490 U.S. at 397. Moreover, we note that Tracy's own account of the incident describes a close-quarters, hand-to-hand struggle at night and in bad weather, which further supports the reasonableness of Freshwater's view of the events. Finally, Tracy's description of the injuries he suffered – a small laceration or abrasion to the scalp – also bolsters our conclusion that Freshwater's use of force was a reasonable and proportionate response under the circumstances. Accordingly, we agree with the district court that Tracy's first claim fails, as a matter of law, to allege a constitutional violation, and, consequently, Freshwater is entitled to summary judgment on that claim.

With respect to the second claim – that Freshwater jumped on Tracy as he attempted to flee – we also find that, as a matter of law, the use of force was reasonable under the circumstances. By Tracy's own account, he had managed to struggle free and was attempting to escape when he slipped

12

and fell. Given that he was clearly resisting arrest at that point, it was not unreasonable for Freshwater to respond by diving on top of Tracy and pinning him down so that he could not get back up and continue to flee. Turning again to the *Graham* analysis, we note, first, that the crime in question was now arguably more serious because Tracy was unquestionably resisting arrest which, in turn, only further bolstered Freshwater's presumption that Tracy was a fugitive seeking to evade potentially serious charges. Second, the risk to officer safety and the public persisted. Third, as noted, Tracy was, by his own admission, actively resisting arrest at this point. In finding Freshwater's decision to tackle Tracy to be reasonable, we note again that Freshwater was proceeding on his own without the assistance of other officers. While the injury sustained by Tracy was more serious here, we note that, as a result of the encounter, Freshwater was also injured, giving further credence to our conclusion that his use of force was both necessary and reasonable under the circumstances. Tracy provides no factual issue or legal argument that would discredit any of the above, and, accordingly, we have no difficulty concluding, as the district court did, that Freshwater's use of force was reasonable.

Finally, with respect to Tracy's fourth claim – that Freshwater forcibly moved him to the patrol car despite Tracy's protestations that he could not walk due to injury – we similarly find the use of force to be reasonable. While it is certainly possible that, under different circumstances, the forcible movement of an injured arrestee might amount to the employment of excessive force, here, the undisputed evidence indicates that Officer Freshwater attempted to request assistance using his portable radio, but was frustrated in this attempt by equipment failure. Moreover, in light of Tracy's previous conduct (i.e., attempting to flee arrest) and the cold and wet weather conditions, it was not

13

objectively unreasonable for Officer Freshwater to have declined to leave Tracy unattended while he returned to his patrol car to summon aid. Summary judgment here too was appropriate.

However, with respect to Tracy's third claim of excessive force, which centers on Freshwater's use of pepper spray, we conclude that material issues of fact remain in dispute and preclude a grant of summary judgment. Specifically, the parties dispute whether Freshwater used pepper spray before or after placing Tracy in handcuffs and from what distance Freshwater deployed the spray. Tracy further contends that, before he was sprayed, he told Freshwater that he was not resisting. Without passing on whether the use of pepper spray as described by Freshwater was reasonable – we are, of course, compelled at this stage to credit Tracy's version of the events – we conclude that a reasonable juror could find that the use of pepper spray deployed mere inches away from the face of a defendant already in handcuffs and offering no further active resistance constituted an unreasonable use of force. Summary judgment, thus, is inappropriate with respect to this claim.

Unquestionably, infliction of pepper spray on an arrestee has a variety of incapacitating and painful effects, *see, e.g.*, *Park v. Shiflett*, 250 F.3d 843, 849 (4th Cir. 2001), and, as such, its use constitutes a significant degree of force. Accordingly, a number of our sister circuits have made clear that it should not be used lightly or gratuitously against an arrestee who is complying with police commands or otherwise poses no immediate threat to the arresting officer. *See, e.g.*, *Henderson v. Munn*, 439 F.3d 497, 502-03 (8th Cir. 2006); *Vinyard v. Wilson*, 311 F.3d 1340, 1348-39 (11th Cir. 2002); *Headwaters Forest Def. v. County of Humboldt*, 276 F.3d 1125, 1128-30 (9th Cir. 2002); *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994). Here, if a jury credited Tracy's

14

version of the events and determined that Freshwater applied pepper spray after Tracy had already been handcuffed and was offering no physical resistence of police commands, it might well conclude that the use of that pepper spray was unreasonable under the circumstances. The district court thus erred in taking that issue away from a jury at the summary judgment stage.[5]

Freshwater seeks refuge in an alternate theory. He contends that all of Tracy's claims, including his pepper spray claim, should be foreclosed because of his state court conviction for resisting arrest. Specifically, Freshwater argues that the doctrine of collateral estoppel should preclude Tracy from relitigating those claims here. On this record, we disagree. Collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party." *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000) (quoting *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 500 (1984)); *see also Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008) (describing the doctrine of collateral estoppel as establishing that "'an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties or

---

[5] While a grant of summary judgment might still be appropriate if defendants-appellees could establish the second prong of the qualified immunity inquiry – i.e., that the constitutional right in question was not "clearly established" at the time of the violation – Freshwater makes no such argument before this Court, and, accordingly, we do not consider the issue in any detail. We do note that it was well established at the time of the underlying altercation that the use of entirely gratuitous force is unreasonable and therefore excessive, *see, e.g., Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999), and in light of this precedent, we presume that no reasonable officer could have believed that he was entitled to use pepper spray gratuitously against a restrained and unresisting arrestee. *See Asociacion de Periodistas de Puerto Rico v. Mueller*, 529 F.3d 52, 60-62 (1st Cir. 2008) (reaching similar conclusion with regard to purportedly unprovoked use of pepper spray against members of nonthreatening crowd); *Vinyard v. Wilson*, 311 F.3d 1340, 1355 (11th Cir. 2002) (finding the "clearly established" test similarly satisfied, notwithstanding absence of fact-specific prior case law, where officer sprayed restrained defendant in back seat of police car).

their privies'" (emphasis omitted) (quoting *United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 718-19 (2d Cir. 1993))). The party seeking to invoke the doctrine bears the burden of establishing its applicability. *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006).

As we have previously explained, a prior conviction for resisting arrest *may* preclude a subsequent excessive force claim where "facts actually determined in [the] criminal conviction that were necessary to the judgment of conviction are incompatible with the claim of excessive force being raised in the civil suit." *Sullivan*, 225 F.3d at 166. However, because resistance to arrest "does not give the officer license to use force without limit" in response, "there is no inherent conflict between a conviction for resisting arrest . . . and a finding that the police officers used excessive force in effectuating [that] arrest." *Id.* In other words, "a lawful arrest" for resisting arrest "may be accompanied by excessive force," *id.*, and therefore "the jury's return of a guilty verdict in state court for resisting arrest . . . does not necessarily preclude a subsequent claim of excessive force in federal court." *Id.* at 165.

Here, the fact that Tracy was convicted of resisting arrest does not appear to present an "inherent conflict" with his claim that Freshwater exerted unreasonable force in effecting that arrest by deploying pepper spray after Tracy had already been handcuffed. Under New York law, an individual commits the offense of resisting arrest when he "intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person." N.Y. Penal Law § 205.30. Accordingly, to convict Tracy, the jury needed only to find that (1) the defendant intentionally engaged in some conduct by which he either prevented or attempted to prevent an arrest, and (2) the arrest was lawful in that it was supported by either a warrant or

16

probable cause.  *See Curry v. City of Syracuse*, 316 F.3d 324, 336 (2d Cir. 2003).

While we are not presented with the full record from Tracy's criminal proceedings and are thus constrained in our efforts to determine what facts were fairly litigated and necessarily decided in that action, *see Sullivan*, 225 F.3d at 166, we see no basis in the record that is before us to conclude that either the timing of Freshwater's use of pepper spray or the reasonableness of that use of force was actually litigated and necessarily decided by the criminal jury.  As such, we cannot conclude on this record that Tracy's previous conviction bars his remaining excessive force claim.

However, as noted, no party has favored this Court with the full record developed in Tracy's criminal proceeding, nor does the issue of estoppel appear to have been directly raised with the district court.  As a result, on remand, Freshwater remains free to present that court with a basis, consistent with our guidance in *Sullivan*, for using the criminal conviction to preclude in whole or in part Tracy's remaining claim.  While, as noted, we express some doubt that Tracy's criminal jury was actually asked to necessarily decide the factual and legal issues underlying his remaining excessive force claim, we do not foreclose the possibility that a careful review of the criminal trial record would establish otherwise.  For example, assertion of a particular affirmative defense or use of a special verdict form might indeed make clear that a criminal jury necessarily decided factual and legal issues such as those remaining in this case.

However, given that, on this record, issues of material fact remain in dispute with respect to Tracy's pepper spray claim, and notwithstanding Freshwater's attempted reliance here upon the doctrine of collateral estoppel, we are compelled to remand for further proceedings on that issue.

17

**B.      Special Solicitude**

We now turn to the district court's withdrawal of special solicitude.  As previously noted, the magistrate judge recommended, and the district court approved, that the special solicitude ordinarily afforded to *pro se* litigants be withheld from Tracy for the remainder of this action on the ground that Tracy was an experienced litigant.  Because it appears that Tracy may not be represented by counsel on remand, the district court's withdrawal of special solicitude presumably will continue to be applicable in further proceedings.  Hence, it is necessary for us to consider now whether such withdrawal was appropriate.  We note at the outset of this discussion that it applies only to *pro se* litigants in civil actions, as a variety of additional concerns, not addressed here, may be relevant in the context of criminal proceedings.

It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006); *see also McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988) ("[P]ro se litigants may in general deserve more lenient treatment than those represented by counsel.").  The rationale underlying this rule is that a *pro se* litigant generally lacks both legal training and experience and, accordingly, is likely to forfeit important rights through inadvertence if he is not afforded some degree of protection.  *See Triestman*, 470 F.3d at 475.  Somewhat unsurprisingly, then, district courts within this Circuit have developed a practice of withdrawing this solicitude if a *pro se* litigant is deemed to have become generally experienced in litigation through participation in a large number of previous legal actions.  *See Zimmerman v. Burge*, No. 06-cv-0176, 2008 WL 850677, at *9-*10 (N.D.N.Y. Mar. 28, 2008) (collecting cases); *Edwards v. Selsky*, No. 9:04-cv-1054, 2007 WL 748442, at *2-*3 (N.D.N.Y. Mar.

18

6, 2007) (same). We have occasionally endorsed some limited forms of this practice, *see, e.g., Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994) (denying a *pro se* plaintiff an opportunity to replead on the ground that he was "an extremely litigious inmate who [wa]s quite familiar with the legal system and with pleading requirements"), and have recently suggested that it may be appropriate "to charge a *pro se* litigant with knowledge of, and therefore withdraw special status in relation to, particular requirements [of the legal system] with which he is familiar as a result of his extensive prior experience in the courts." *Sledge v. Kooi*, 564 F.3d 105, 109 (2d Cir. 2009). At the same time, however, we have also recently expressed, albeit in dicta, our concern that the general withdrawal of solicitude may impose unreasonable burdens on *pro se* litigants in some circumstances. *See id*.

The solicitude afforded to *pro se* litigants takes a variety of forms. It most often consists of liberal construction of pleadings, motion papers, and appellate briefs. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *In re Sims*, 534 F.3d 117, 133 (2d Cir. 2008); *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007). It is not, however, limited to this specific procedural setting. Rather, it also embraces relaxation of the limitations on the amendment of pleadings, *see Holmes v. Goldin*, 615 F.2d 83, 85 (2d Cir. 1980) ("A *pro se* plaintiff . . . should be afforded an opportunity fairly freely to amend his complaint."), leniency in the enforcement of other procedural rules, *see LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) ("*[P]ro se* plaintiffs should be granted special leniency regarding procedural matters."); *Enron Oil Co. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) ("A party appearing without counsel is afforded extra leeway in meeting the procedural rules governing litigation . . . ."); *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (indicating that, although the right of self-representation does not exempt a *pro se* litigant from

19

compliance with procedural rules, it "should not be impaired by harsh application of technical rules"), and deliberate, continuing efforts to ensure that a *pro se* litigant understands what is required of him, *see Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994) ("Recognizing that the [plaintiffs] were acting *pro se*, the district court should have afforded them special solicitude before granting the [defendant's] motion for summary judgment. It had an obligation to make certain that the [plaintiffs] were aware of and understood the consequences to them of their failure to comply with the Local Rules." (internal citation omitted)); *Enron Oil Corp.*, 10 F.3d at 96 ("[T]rial judges must make some effort to protect a party [proceeding *pro se*] from waiving a right to be heard because of his or her lack of legal knowledge.").

The scope of the solicitude afforded may vary depending on the procedural context and the demands placed by that context upon the inexperienced litigant. For example, in light of the particular difficulties presented by a motion for summary judgment, this Court has previously indicated that a district court errs by failing to advise a *pro se* litigant of the nature of such a motion and the consequences of failing to respond to it properly, unless the opposing party has already provided the *pro se* litigant with such notice or it is otherwise clear from the record that the *pro se* litigant understands the nature of the motion. *See McPherson v. Coombe*, 174 F.3d 276, 280-81 (2d Cir. 1999).

In addition, the appropriate degree of special solicitude is not identical with regard to all *pro se* litigants. We have sometimes suggested that a court should be particularly solicitous of *pro se* litigants who assert civil rights claims, *see Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003), and litigants who are incarcerated also receive certain special solicitude, *see Houston v. Lack*, 487 U.S. 266, 270-72 (1988) (indicating that a *pro se* inmate's submission is deemed filed with the

20

appropriate federal court as of the date it is given to prison officials); *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009) (noting that the personal affidavit of an inmate proceeding *pro se* will often be granted more than ordinary significance in light of his substantial difficulty in generating record evidence beyond his own affidavit). Alternatively, as noted above, the degree of solicitude may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented. *See Davidson*, 32 F.3d at 31. The ultimate extension of this reasoning is that a lawyer representing himself ordinarily receives no such solicitude at all. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001); *see also Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 633 (6th Cir. 2008) (indicating that a district court does not err by refusing to afford special solicitude to a practicing lawyer who is proceeding *pro se*); *Godlove v. Bamberger, Foreman, Oswald, & Hahn*, 903 F.2d 1145, 1148 (7th Cir. 1990) ("Ordinarily, we treat the efforts of *pro se* applicants gently, but a *pro se* lawyer is entitled to no special consideration.").

In sum, relevant precedent indicates that, while a *pro se* litigant should ordinarily be afforded a substantial degree of solicitude, the exact degree thereof will depend upon a variety of factors, including, but not necessarily limited to, the specific procedural context and relevant characteristics of the particular litigant. In some circumstances, such as when a particular *pro se* litigant is familiar with the procedural setting as a result of prior experience such that "it is appropriate to charge [him] with knowledge of . . . particular requirements," *Sledge,* 564 F.3d at 109, it falls well within a district court's discretion to lessen the solicitude that would normally be afforded. Given the wide range of circumstances confronting district courts, we do not purport to establish an exhaustive list of the relevant considerations as to when and to what degree departure from the usual rule of special

21

solicitude is appropriate. We believe instead that district courts should exercise their discretion in such cases, subject to review for its abuse, to determine based on the totality of the relevant circumstances when the ordinary approach is not appropriate and what degree of solicitude, if any, should be afforded.

It remains for us to determine here whether the district court's complete withdrawal of the ordinary solicitude from Tracy for the remainder of this action, primarily on the basis of Tracy's experience with the legal system, constituted a proper exercise of discretion. As suggested above, a *pro se* litigant's experience with and knowledge of both the legal system in general and the particular procedural context at issue are certainly factors that a court should consider when determining the degree of solicitude to afford that litigant. Moreover, it is certainly possible that a *pro se* litigant may be sufficiently experienced as to justify a court affording him only minimal solicitude and, at least under certain circumstances, a litigant's experience and knowledge may even justify complete withdrawal of solicitude for the entirety of an action, *see Godlove*, 903 F.2d at 1148 (denying special solicitude to *pro se* practicing attorney); *cf. Sledge*, 564 F.3d at 109 (suggesting that general withdrawal may be appropriate where there has been "a strong showing that a *pro se* litigant has acquired adequate experience more generally, so as to render special solicitude unnecessary and potentially inappropriate").

In the circumstances here, however, we are unwilling to endorse the general withdrawal of such solicitude for the entirety of the action on the basis of Tracy's repeated earlier participation in only some aspects of litigation. As noted earlier, the underlying justification for the solicitude ordinarily granted to *pro se* litigants is that it is necessary to prevent such parties, who generally lack legal training and experience, from inadvertently forfeiting important rights. *See Triestman*, 470

22

F.3d at 475. This rationale is undermined where there are substantial indications that a litigant is fully aware of the requirements of the stage of litigation at issue. Such may very well be the case where a litigant has previously participated in that stage of litigation, particularly if he has done so repeatedly and has demonstrated competence in doing so. But the inference that a repeat litigant must be fully aware of the requirements of *all* stages of litigation merely as a result of frequent participation in legal actions is dramatically more attenuated, *see Sledge*, 564 F.3d at 109-10 (noting the difficulty in making this inference), particularly in light of the tendency of *pro se* actions to be dismissed early in the litigation process, *see* Jonathan D. Rosenbloom, *Exploring Methods to Improve Management and Fairness in* Pro Se *Cases: A Study of the* Pro Se *Docket in the Southern District of New York*, 30 Fordham Urb. L.J. 305, 335-38 (2002) (noting that a large majority of *pro se* actions are dismissed either *sua sponte* or pursuant to motions to dismiss or for summary judgment).

Tracy's previous participation in ten federal and state actions does not on its own justify a complete withdrawal of solicitude for the entirety of this action, including any trial that may ensue. His voluminous motion practice, even if coupled with some degree of demonstrated competence in prior filings, is insufficient to cure this deficiency. We note that it may well have been appropriate to withdraw Tracy's special status in relation to the requirements of opposing a motion for summary judgment. The magistrate judge properly observed that Tracy's papers in this action have been "exceptionally good . . . [and] accompanied by affidavits, exhibits[,] and memoranda of law." Report & Recommendation at 13. We agree, moreover, that "permitting experienced *pro se* litigants to retain their special status (despite their litigation experience)" could in some circumstances "tilt the scales of justice unfairly in [their] favor . . . and against [their] opponents." *Id.* at 9. At the same

23

time, however, the showing here was not sufficient to justify a full withdrawal of special status with regard to all aspects of this litigation. Accordingly, we vacate the decision of the district court to the extent that it denied Tracy the special solicitude ordinary afforded to *pro se* litigants for the remainder of the action. Our decision, however, should not be read as prohibiting the district court on remand from limiting or even withdrawing solicitude with regard to particular matters, as appropriate, based on Tracy's substantial litigation experience.

## CONCLUSION

We have considered all of Tracy's remaining contentions on this appeal and have found them to be without merit. Pursuant to the reasoning described herein, we conclude that Tracy has established a genuine issue of material fact with regard to his claim that Officer Freshwater used excessive force when he sprayed Tracy with pepper spray. In addition, we hold that the district court erred when it adopted the magistrate judge's recommendation that Tracy be deprived of the solicitude ordinarily granted to *pro se* litigants for the remainder of this action. For these reasons, the judgment of the district court is **VACATED** and the case is **REMANDED** for further proceedings consistent with this opinion.