22-71 (L)
*Franco v. Gunsalus*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of May, two thousand twenty-three.

PRESENT: Guido Calabresi,
Steven J. Menashi,
Eunice C. Lee,
*Circuit Judges.*

———————————————————————————

MARIO FRANCO,

*Plaintiff-Appellant-Cross-Appellee,*

v.          Nos. 22-71, 22-339

POLICE OFFICER JOHN GUNSALUS, 0453, ALL SUED HEREIN IN THEIR CAPACITY AS INDIVIDUALS, POLICE OFFICER SHAWN KELLY, 279, ALL SUED HEREIN IN THEIR CAPACITY AS INDIVIDUALS,

*Defendants-Appellees-Cross-Appellants.*[*]

———————————————————————————

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

*For Plaintiff-Appellant-Cross-Appellee*:   STEPHEN BERGSTEIN, Bergstein & Ullrich, New Paltz, NY (Fred B. Lichtmacher, Law Office of Fred Lichtmacher, PC, New York, NY, *on the brief*).

*For Defendants-Appellees-Cross-Appellants*:   JOHN G. POWERS, MARY L. D'AGOSTINO, Hancock Estabrook LLP, Syracuse, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Scullin, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Mario Franco brought a Section 1983 lawsuit against Syracuse police officers John Gunsalus and Shawn Kelly, alleging violations of Franco's constitutional rights following the dispersal of a July 4th block party in Syracuse, New York. A jury sided with Franco, awarding him compensatory damages for excessive force, false arrest, and malicious prosecution. Franco appeals, taking issue with the district court's decision not to instruct the jury on punitive damages. The officers cross appeal, arguing that they are entitled either to qualified immunity or to judgment as a matter of law on Franco's Section 1983 claims.

We affirm the judgment of the district court. Franco did not properly preserve his objection to the district court's decision not to issue a punitive damages instruction. Accordingly, we review this aspect of the district court's judgment under the plain-error standard, and we conclude that the decision was not plainly erroneous. In addition, we conclude—based on the record at trial—that a reasonable jury could have concluded that the officers were liable and not

entitled to qualified immunity. We assume the parties' familiarity with the underlying facts and procedural history.

## I

Because Franco "failed to preserve [his] objection to the district court's decision not to include a punitive damages charge," we review "solely for plain error." *Emamian v. Rockefeller Univ.*, 971 F.3d 380, 387 (2d Cir. 2020). Under this standard of review, we do not agree that the district court's decision on the punitive damages instruction was plainly erroneous.

## A

"A party who objects to ... the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). But if a party fails to make the objection properly, "[a] court may consider a *plain error* in the instructions ... if the error affects substantial rights." Fed. R. Civ. P. 51(d)(2) (emphasis added). We have elaborated on this standard for district court decisions on punitive damages instructions, explaining that "[t]o constitute plain error in these circumstances, a court's action must affect substantial rights, contravene an established rule of law, and go to the very essence of the case." *Emamian*, 971 F.3d at 388 (internal quotation marks omitted).

Franco did not properly object to the district court's decision on his requested punitive damages instruction. In a set of proposed jury instructions, Franco had asked for a punitive damages charge. The district court rejected the proposed instruction, stating that it "decided not to charge on punitive damages" because "given the facts and circumstances of the case … I don't think it's an appropriate charge." J. App'x 560. In response, Franco's counsel stated: "Plaintiff does object to your omitting that charge, your Honor." *Id.*

That objection was insufficient to preserve Franco's punitive damages argument on appeal. Under Rule 51, a party must "stat[e] distinctly ... the grounds

for the objection." Fed. R. Civ. P. 51(c)(1); *see also Lopez v. Tyson Foods, Inc.*, 690 F.3d 869, 876 (8th Cir. 2012) ("An objection must be specific, precise enough to allow the district court to address any problems and avoid a retrial. A general objection to a jury instruction, even when it encompasses a specific objection, is insufficient.") (quoting *Bauer v. Curators of the Univ. of Mo.*, 680 F.3d 1043, 1045 (8th Cir. 2012)). Franco's counsel failed to provide a reason for his objection, simply stating that "Plaintiff does object" to the omission of a punitive damages charge. The objection did not provide the district court an opportunity to address any arguments against its decision and for that reason failed to comply with Rule 51(c).

**B**

Because Franco forfeited his argument regarding the punitive damages instruction, we consider whether the district court's omission of the charge constituted plain error. *See Emamian*, 971 F.3d at 387; *see also* Fed. R. Civ. P. 51(d)(2). It did not.

"A punitive damages instruction is appropriate when the plaintiffs have produced evidence that the defendant's conduct is motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Cameron v. City of New York*, 598 F.3d 50, 69 (2d Cir. 2010) (internal quotation marks and alteration omitted). Under this standard, a district court should issue a punitive damages instruction "when the plaintiffs have produced evidence of a positive element of conscious wrongdoing or malice." *Id.* (internal quotation marks omitted).

Franco makes two arguments in support of a punitive damages instruction. As to the excessive force claim, Franco states that punitive damages would be appropriate because Gunsalus subjected him to "[g]ratuitous and unprovoked ... force." Appellant-Cross-Appellee Br. 22. As to the false arrest and malicious prosecution claims, Franco argues that punitive damages would be appropriate because "the jury ... found the officers lacked probable cause, and its special

4

interrogatories demonstrate that Gunsalus had no reason to believe that Franco had ignored any verbal commands to disperse." *Id.* at 29.

Reviewing for plain error, we disagree. The district court did not contravene an established rule of law when it decided there was "no factual predicate in the trial record" for the charge. *Franco v. Gunsalus*, No. 16-CV-634, 2022 WL 93570, at *10 (N.D.N.Y. Jan. 10, 2022) (quoting *McCardle v. Haddad*, 131 F.3d 43, 52 (2d Cir. 1997)). It properly relied on the legal standard for punitive damages given in *Cameron*, requiring "evidence of a positive element of conscious wrongdoing or malice." *Id.* (internal quotation marks omitted). And the district court's conclusion that Franco failed to adduce this evidence at trial was not plainly erroneous. The jury concluded that Gunsalus used excessive force in his apprehension of Franco and, with respect to false arrest and malicious prosecution, "the jury reasonably could have concluded that [the officers] did not have probable cause to arrest [Franco] on any charges" and indeed that "no reasonable officer would have believed that he had probable cause to arrest [Franco]." *Id.* at *7, *4. Yet these findings do not establish Gunsalus's *subjective* intent—which *Cameron* indicates is required. *See also Amid v. Chase*, 720 F. App'x 6, 13 (2d Cir. 2017) (describing the standard as subjective). The jury did not determine whether Gunsalus actually issued an order of dispersal and whether he thought, even if unreasonably, that Franco heard such an order and failed to comply. *See Franco*, 2022 WL 93570, at *4 ("The jury was free to credit Plaintiff's and these witnesses' testimonies to conclude that Defendants either did not order partygoers to disperse *or that, for a variety of reasons, it was unreasonable for Defendants to believe that Plaintiff heard the order*.") (emphasis added).

Neither an excessive use of force nor an unreasonable belief about probable cause necessarily entitles a Section 1983 plaintiff to punitive damages. We have long held that the availability of punitive damages requires more than what is required for liability under Section 1983. "To accept [the contrary] proposition would essentially expose a defendant to an award of punitive damages for any conduct not protected by qualified immunity, and would thereby make the

5

availability of punitive damages equal to the availability of compensatory damages. That proposition is contrary to the principles [of our Section 1983 case law]." *McCardle*, 131 F.3d at 53. The district court concluded that Franco had failed to identify evidence of the officers' subjective awareness of wrongdoing. On this record, we cannot say that its determination was plainly erroneous.

## II

While we decline Franco's request to remand the case for a new trial on punitive damages, we affirm the judgment of the district court as it pertains to compensatory damages against Officers Gunsalus and Kelly. The officers argue that the district court erroneously denied their requests for qualified immunity and for judgment as a matter of law on the three claims for which Franco received compensatory damages: excessive force, false arrest, and malicious prosecution. "We review *de novo* a district court's decision on a Rule 50(a) motion for judgment as a matter of law, as well as its decision to grant qualified immunity, and we apply the same standard as the district court itself was required to apply. Accordingly, in the context of a Rule 50(a) motion, we must consider the evidence in the light most favorable to the party against whom the motion was made and give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence." *Jones v. Treubig*, 963 F.3d 214, 223-24 (2d Cir. 2020) (internal quotation marks, alteration, and citations omitted).

We apply "a two-step sequence for resolving government officials' qualified immunity claims." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). First, we "must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Id.* (citations omitted). Second, if the plaintiff has made such a showing, we "must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Id.* (citation omitted). Here, our inquiry into whether the officers are entitled

6

to judgment as a matter of law is coextensive with the first step of the qualified immunity inquiry. We address each of the three findings of liability in turn.

## A

The jury found Gunsalus liable for the use of excessive force. *Franco*, 2022 WL 93570, at *1. "When a plaintiff alleges excessive force, the federal right at issue is the Fourth Amendment right against unreasonable seizures." *McKinney v. City of Middletown*, 49 F.4th 730, 739 (2d Cir. 2022) (alteration omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)). In determining whether force was excessive, we "balanc[e] the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). We have held that a police officer violates a clearly established Fourth Amendment right when he "use[s] significant force against an arrestee who is no longer resisting and poses no threat to the safety of officers or others." *Jones*, 963 F.3d at 225. Moreover, it was well established in our circuit at the time of the altercation "that the use of entirely gratuitous force is unreasonable and therefore excessive." *Id.* (quoting *Tracy*, 623 F.3d at 99 n.5).

We agree with the district court "that the jury was reasonable in balancing all of the factors ... and finding that a reasonable officer would not have used the amount of force [Officer] Gunsalus used when arresting [Franco]." *Franco*, 2022 WL 93570, at *6. The crimes leading to the arrest—disorderly conduct and second-degree harassment—were not particularly severe. A reasonable jury could have concluded, when considering the totality of the circumstances, that Franco did not pose a threat to Gunsalus or others. The jury was free to credit the testimony of Franco and other witnesses that Franco did not actively resist arrest or push Gunsalus. We affirm the judgment of the district court with respect to Franco's excessive force claim.

## B

The jury also found Gunsalus and Kelly liable for false arrest. *Franco*, 2022 WL 93570, at *1. To determine whether a defendant violated the plaintiff's Fourth

Amendment right not to be subjected to a warrantless arrest without probable cause, we consider whether the officers had probable cause to make an arrest. For the purposes of qualified immunity, we ask whether the officers had "arguable probable cause," which "exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted).

The officers claim that they had probable cause to arrest Franco for disorderly conduct or harassment. But we agree with the district court that a reasonable jury could have determined that no probable cause existed for either charge. As to disorderly conduct, the jury could have credited the testimony of those witnesses who said that they did not hear a dispersal order and concluded that Gunsalus either did not issue the order or had no objective basis to believe that Franco had heard such an order. Under those circumstances, the officers would have lacked arguable probable cause to arrest Franco for disobeying a dispersal order. The jury also could have credited those witnesses who testified that the car was parked close to the curb and that Franco was not standing in a way that would have blocked traffic. Under such circumstances, the officers would have lacked arguable probable cause to arrest Franco for obstructing traffic. As to harassment, the jury was free to credit the testimony of trial witnesses—including that of Franco himself—who said that Franco did not push, hit, or otherwise put his hands on Officer Gunsalus. We affirm the judgment of the district court with respect to Franco's false arrest claim.

## C

The jury found Gunsalus liable for malicious prosecution. *Franco*, 2022 WL 93570, at *1. "[T]he Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person—*i.e.*, the right to be free of unreasonable or unwarranted restraints on personal liberty." *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004). "To prevail on a malicious

8

prosecution claim under New York law and federal law, a plaintiff must show: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice." *Kee v. City of New York*, 12 F.4th 150, 161-62 (2d Cir. 2021) (internal quotation marks omitted). We have explained in this context that "malice does not have to be actual spite or hatred, but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (quoting *Nardelli v. Stamberg*, 44 N.Y.2d 500, 502-03 (1978)).[1]

Because a malicious prosecution claim implicates the Fourth Amendment, "[a] plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must ... show some deprivation of liberty consistent with the concept of 'seizure.'" *Washington*, 373 F.3d at 316. "We have consistently held that a post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required suffers a Fourth Amendment deprivation of liberty." *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013) (internal quotation marks and alterations omitted). The officers cite a summary order, *Faruki v. City of New York*, 517 F. App'x 1 (2d Cir. 2013), for the proposition that a plaintiff does not suffer a deprivation of liberty when he faces "no restriction ... other than a requirement [to] appear in court on two occasions." *Id.* at 1. *Faruki* relies on *Burg v. Gosselin*, 591 F.3d 95 (2d Cir. 2010), in which we held that "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." *Id.* at 98. But we need not address how *Faruki* and *Berg*

---

[1] The "actual malice" standard for malicious prosecution is thus distinct from the "evil motive or intent" or "reckless or callous indifference" standard for punitive damages discussed above.

interact with the rule articulated in *Swartz*. To decide this case, it is enough to say that Franco suffered a deprivation of liberty because he faced a restriction greater than the one at issue in *Faruki*. As the district court observed, the jury was able to conclude that Franco "continually returned to court on a monthly basis before the case was over" in connection with serious criminal charges. *Franco*, 2022 WL 93570, at *7. That restriction constitutes a sufficient deprivation of liberty under *Swartz*.

A reasonable jury could have concluded that Officer Gunsalus was liable for malicious prosecution. As to the first and second elements of the test for malicious prosecution, "[t]he parties stipulated before trial that the criminal charges initiated against [Franco] were terminated in [Franco's] favor." *Id.* at *6 n.1. And for the reasons stated above, the jury was free to conclude that probable cause did not exist for the criminal proceeding at issue here. As we have previously explained, "[m]alice may be inferred … from the absence of probable cause." *Dufort v. City of New York*, 874 F.3d 338, 353 (2d Cir. 2017). The jury could have made an inference of malice in this case. We acknowledge that the third and fourth elements are distinct from one another; a jury cannot infer malice in every case in which probable cause is lacking. Under New York law, probable cause must be "so scant" that the inference of malice is justified. *De Lourdes Torres v. Jones*, 26 N.Y.3d 742, 761 (2016). But here, such an inference was possible because the jury "could have reasonably credited testimony … that [Officer] Gunsalus appeared to be looking for a fight." *Franco*, 2022 WL 93570, at *7.

\* \* \*

We have considered the parties' remaining arguments, which we conclude are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court