**Getro MILFORT, Plaintiff,**

v.

**Court Officer Felix PREVETE, Court Officer Christopher Ferrari, Defendants.**

**No. 10–CV–4467.**

United States District Court, E.D. New York.

Feb. 13, 2013.

---

**14.** Plaintiff's state law claims were dismissed at the motion to dismiss stage.

Paul Hale, Paul Hale, Attorney at Law, Brooklyn, NY, for Plaintiff.

Roberta Lynne Martin, Charles Fernando Sanders, New York State Office of the Attorney, New York, NY, for Defendants.

## *MEMORANDUM AND ORDER*

WILLIAM F. KUNTZ, II, District Judge.

Plaintiff Getro Milfort ("Plaintiff") commenced this action against defendants Felix Prevete ("Lt. Prevete") and Christopher Ferrari ("Court Officer Ferrari") (collectively "Defendants"), court officers of the New York State Unified Court System, arising from an incident where Plaintiff was arrested for disorderly conduct for an alleged violation of N.Y. Penal Law § 240.20. Plaintiff seeks recovery, under 42 U.S.C. § 1983, for false arrest, false imprisonment, excessive force, denial of equal protection, and deprivation of due process. Defendants move for summary judgment to dismiss the complaint pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, Defendants' motion is granted in part and denied in part.

## I. Factual Background

### A. Undisputed Facts

On June 18, 2010, Plaintiff was present at the Civil Court of the City of New York, Kings County, located at 141 Livingston Street, Brooklyn, New York. *Defendants' Rule 56.1 Statement*, at ¶¶ 1, 16 (*"Defs.' 56.1"*). As Plaintiff stood in the courthouse security line, he spoke on his phone with an unknown individual. *Id.* at ¶ 19. Noticing Plaintiff, Lt. Prevete approached Plaintiff and informed him that he must exit the line if he wished to continue his phone call. *Id.* at ¶ 20. Lt. Prevete instructs individuals on a daily basis to finish their calls and continue through security or else leave the building to finish their calls. *Aff. of Felix Prevete in Supp. of the Defs.' Mot. for Summ. J.,* at ¶ 19 (*"Prevete Aff."*).

While the parties dispute the series of ensuing events to follow, as articulated below, Plaintiff and Lt. Prevete continued to talk. *Defs.' 56.1*, at ¶¶ 23–26; *Decl. of Getro Milfort* at ¶¶ 12–13 (*"Pl.'s Decl."*). Eventually, Lt. Prevete and Court Officer Ferrari arrested and handcuffed Plaintiff. *Defs.' 56.1*, at ¶¶ 34–35. Defendants and other court officers then escorted Plaintiff into the elevator and to the Operations Office on the tenth floor of the courthouse. *Id.* at ¶¶ 39–40.

While in the Operations Office, Lt. Prevete documented the incident by writing an Unusual Occurrence Report. *Id.* at ¶ 43. Plaintiff was issued a summons for violation of Penal Law § 240.20(2), Disorderly Conduct, which states in pertinent part: "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof[,] [h]e makes unreasonable noise." *Id.* at ¶ 44; N.Y. Penal Law § 240.20(2). Due to his arrest, Plaintiff was not able to go to the courtroom where he was scheduled to appear that day, so court officers arranged to have his case adjourned to another date to avoid a default judgment against him. *Defs.' 56.1,* at ¶ 45. After Plaintiff was issued the summons, he was released from custody. *Id.* at ¶ 46.

## B. Plaintiff's Account

According to Plaintiff, and corroborated by Court Officer Ferrari, after Lt. Prevete told Plaintiff to exit the line, Plaintiff did so and moved into a small nearby alcove that was far enough away from the security checkpoint such that Plaintiff could not have been blocking anyone from moving along. *Pl.'s Decl.,* at ¶¶ 11, 18; *Ferrari Dep. Tr.* at 17:3–24. Lt. Prevete then walked over to Plaintiff and again told him to end his phone call, and Plaintiff indicated he would do so. *Id.* at ¶¶ 12–13. Before Plaintiff could do so, however, Lt. Prevete grabbed Plaintiff's phone out of his hand and pushed Plaintiff, causing Plaintiff to strike his head against a wall. *Id.* at ¶¶ 14–15. Several court officers then grabbed Plaintiff and told him he was under arrest. *Id.* at ¶ 16. Neither Plaintiff nor Lt. Prevete raised their voices prior to the arrest. *Id.* at ¶ 17.

During Plaintiff's arrest, an individual whom Plaintiff believes to have been Court Officer Ferrari shoved him against the wall and pulled his wrist up towards his neck behind his back, causing him to feel a "popping" sensation in his neck and back area. *Id.* at ¶¶ 27–28. Four other court officers then forcibly held Plaintiff against the wall. *Id.* at ¶ 29. In the elevator, Court Officer Ferrari pulled and twisted Plaintiff's arm in a way that caused Plaintiff to feel extreme pain and a tearing sensation in his shoulder. *Id.* at ¶ 31. Plaintiff also asserts that while in the elevator, Court Officer Ferrari placed his knee into Plaintiff's back, and, with one hand on his face and one hand on his shoulder, twisted Plaintiff's body. *Pl.'s Dep. Tr.* at 73: 5–17. When Plaintiff complained of the pain, Court Officer Ferrari called him a "motherfucker" and told him to "shut the fuck up." *Pl.'s Decl.,* at ¶ 32.

Plaintiff contends that after receiving the summons, he asked an officer to call him an ambulance because he was in pain, but that the unnamed officer responded by saying that if Plaintiff did not leave, he would spend the weekend in jail. *Pl.'s Decl.,* at ¶ 35. Following his release, Plaintiff went directly to Long Island College Hospital via taxi for treatment. *Id.* at ¶ 40. At the hospital, Plaintiff complained of extreme pain and lost range of motion in his arm due to the incident with Court Officer Ferrari. *Id.* at ¶ 41. Plaintiff received an injection to treat his pain. *Id.* at ¶ 42. Plaintiff then consulted with his primary care physician, who sent him to Brooklyn Hospital Orthopedics for physical therapy. *Id.* at ¶ 43. Plaintiff attended approximately fifteen physical therapy sessions between August 2010 and January 2011. *Id.* According to Plaintiff, after failing to show marked improvement, Plaintiff received an MRI in January 2011, the report of which stated the following:

"There is retrolisthesis of C6 on C7 of approximately 2 mm. [T]here is loss of disc space height at this level. There is anterior osteophyte formation along the

anterior margin of the vertebral body however, given the retrolisthesis and history of trauma, posttraumatic retrolisthesis is not excluded .... 2 mm retrolisthesis of C6 on C7 in combination with a moderate central disc herniation may represent the sequela of traumatic disc herniation as outlined above."

*Id.* at ¶ 44; *Pl.'s Resp. to Defs.' 56.1,* Ex. 8. Plaintiff still suffers from lingering effects of the June 18, 2010 incident, including decreased range of motion in his arms, shoulders, and neck, as well as pain in his shoulder and neck. *Pl.'s Decl.,* at ¶ 45.

### C. Defendants' Account

According to Defendants, rather than terminate his conversation as instructed, Plaintiff told Lt. Prevete that he did not have to listen to a court officer and that he was finishing his phone call. *Defs.' 56.1,* at ¶ 21. Concerned that Plaintiff was preventing people behind him from gaining access to and going through the security checkpoint, Lt. Prevete advised Plaintiff to either pass through security without speaking on his phone, finish the call outside the courthouse, or else face arrest. *Prevete Aff.,* at ¶¶ 18, 23. In response, Plaintiff began to argue with Lt. Prevete in a loud and belligerent manner, causing other court officers and the public to take notice. *Defs.' 56.1,* at ¶ 26. Several of the court officers then walked over to the area where Lt. Prevete and Plaintiff were standing. *Id.* at ¶ 33. Due to Plaintiff's actions and behavior, an unnamed court officer directed that Plaintiff should be arrested. *Id.* at ¶ 34.

While arresting Plaintiff, the court officers, including Court Officer Ferrari but not including Lt. Prevete, took hold of Plaintiff's arms, placed them behind his back, and handcuffed him around his wrists; at no time did the officers lift Plaintiff's wrists towards his neck. *Id.* at ¶¶ 35–36. Plaintiff did not resist or fight during his arrest and handcuffing. *Prevete Dep. Tr.* at 34:6–10. At the time of Plaintiff's arrest, Lt. Prevete had determined that Plaintiff had committed a crime, based on Plaintiff's obstruction of pedestrian traffic and his loud and belligerent refusal to cooperate with a law enforcement order. *Defs.' 56.1,* at ¶ 38.

After escorting Plaintiff to the Operations Office, Court Officer Ferrari returned to the lobby and neither saw nor encountered Plaintiff during the remainder of that day. *Id.* at ¶ 41. Defendants claim that during Plaintiff's arrest, escort, and stay in the Operations Office, Plaintiff did not complain of or exhibit any pain or injuries, nor did he request or need any medical attention. *Id.* at ¶ 42.

### D. Commencement of the Action

On September 13, 2010, Plaintiff accepted an adjournment in contemplation of dismissal of the summons issued by Lt. Prevete for the disorderly conduct charge. *Defs.' 56.1,* at ¶ 51. Plaintiff commenced this action on September 28, 2010, seeking damages for false arrest, false imprisonment, malicious prosecution,[1] excessive force, denial of equal protection, and deprivation of due process. *Compl.,* at ¶ 47.

## II. Discussion

### A. Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any

---

1. Plaintiff conceded in a pre-motion conference letter to the Court dated October 14, 2011 that his initial claim for malicious prosecution was without basis. ECF No. 40.

factual issues to be tried. In determining whether summary judgment is appropriate, this Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir.2011) (internal citations and quotation marks omitted). No genuine issue of material fact exists "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir.2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

If the moving party satisfies this burden, the non-moving party must "make a showing sufficient to establish the existence of [each] element to that party's case ... since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir.2011) ("Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment."). Importantly, if the evidence produced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (internal citations omitted).

### B. Qualified Immunity Standard

 In addition to contesting Plaintiff's claims on the merits, Defendants also assert qualified immunity for their actions on June 18, 2010. A qualified immunity defense is established if "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir.1996). In the context of a motion for summary judgment, the relevant standard is whether "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987) (internal editing omitted).

The Second Circuit has explained that "[a]n officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances." *Lennon v. Miller*, 66 F.3d 416, 420–21 (2d Cir. 1995). "Thus, if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances, summary judgment for the officers is appropriate." *Id.*

Plaintiff alleges that his right to be free from false arrest and excessive force was violated. Because there is "no question that [these rights] were clearly established at the time of the incident," a point that Defendants concede, Defendants' actions are protected by qualified immunity only if it was objectively reasonable for Defendants to believe that their actions did not violate these rights. *Id.*

### C. False Arrest and False Imprisonment

#### i. Applicable Law

 A § 1983 claim for false arrest sounding in the Fourth Amendment is

"substantially the same" as a claim for false arrest under New York law. *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir.2003) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996)). Under New York law, the torts of false arrest and false imprisonment are "synonymous." *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir.1991). "To establish a claim under § 1983 for false arrest a plaintiff must show that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Carson v. Lewis*, 35 F.Supp.2d 250, 257 (E.D.N.Y.1999) (Seybert, J.) (citing *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir.1995)). The existence of probable cause is a complete defense to a § 1983 claim for false arrest. *Weyant*, 101 F.3d at 852; *Singer*, 63 F.3d at 118.

A police officer has probable cause to arrest when he has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852. The validity of an arrest does not depend upon a finding that the arrested person is guilty. *Pierson v. Ray*, 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Rather, a determination of the existence of probable cause "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time." *Maryland v. Macon*, 472 U.S. 463, 470, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985) (internal citation omitted).

The existence of probable cause may be determined as a matter of law provided there is no factual dispute regarding the pertinent events and the knowledge of the officers. *See, e.g., Singer*, 63 F.3d at 118–19 (affirming dismissal of false arrest claim on the ground that the facts supporting store owner's complaint of theft established probable cause). Here, the Court must determine whether a reasonable jury could believe that Defendants lacked probable cause to arrest Plaintiff for disorderly conduct pursuant to N.Y. Penal Law § 240.20.

Under New York law, a person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he does any of the following: (1) fights or engages in violent, tumultuous or threatening behavior; (2) makes unreasonable noise; (3) in a public place, uses abusive or obscene language, or makes an obscene gesture; (4) without lawful authority, disturbs any lawful assembly or meeting of persons; (5) obstructs vehicular or pedestrian traffic; (6) congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse; or (7) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose. N.Y. Penal Law § 240.20.

**ii. There is a Genuine Issue of Material Fact as to Whether Probable Cause to Arrest Plaintiff Existed**

Defendants allege that they had probable cause to arrest Plaintiff for disorderly conduct because his behavior in the courthouse lobby created unreasonable noise, obstructed the flow of pedestrian traffic, and otherwise caused a commotion. *Mem. of Law in Supp. of Defs.' Mot. for Summ. J.*, at 12 ("*Defs.' Mem.*"). Defendants' argument must fail, however, because there is a genuine factual dispute regarding what occurred in the courthouse lobby prior to the time of Plaintiff's arrest.

Plaintiff alleges that prior to his arrest, neither he nor Lt. Prevete raised their voices. *Pl.'s Decl.*, at ¶ 17. Plaintiff

claims he then complied with Lt. Prevete's request that he leave the security line if he wished to continue his telephone conversation by moving into a small alcove some distance away from the security line.[2] *Id.* at ¶ 11. Soon after, a number of court officers grabbed Plaintiff and placed him under arrest. *Id.* at ¶ 16. Under these facts, Plaintiff did not create unreasonable noise, could not have been blocking the flow of pedestrian traffic, and was not causing a scene. If a jury were to credit Plaintiff's account, they would likely find there was no probable cause to arrest Plaintiff for disorderly conduct.

■ Defendants attack the believability of Plaintiff's story, contending that it is implausible that Lt. Prevete would, "at the busiest time of day in a busy courthouse, accost the plaintiff and arrest him without warning." *Reply Mem. of Law in Further Supp. of Defs.' Mot. for Summ. J.*, at 4 ("*Defs.' Reply*"). In essence, Defendants are asking the Court to discredit Plaintiff's account of events and rule on the merits of Plaintiff's claims based solely on the facts as alleged by Defendants. However, "the credibility of witnesses is not to be assessed by the court on a motion for summary judgment." *Anderson v. City of New York*, 817 F.Supp.2d 77, 89 (E.D.N.Y. 2011) (Matsumoto, J.). "Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment." *United States v. Rem*, 38 F.3d 634, 644 (2d Cir.1994) (citing Fed.R.Civ.P. 56(e)).

Defendants attempt to bolster their argument by citing *Adonis v. Coleman*, a case holding that defendant court officers reasonably believed they had probable cause to arrest a plaintiff where she did not voucher her phone at a courthouse security checkpoint and subsequently caused a commotion. *Defs.' Mem.* at 12 (citing *Adonis v. Coleman*, No. 08–CV–1726, 2009 WL 3030197, at *7 (S.D.N.Y. Sept. 23, 2009)). But despite the similarities between *Adonis* and the case at bar, Defendants' reference to *Adonis* is of no avail to Defendants because Judge Cedarbaum's decision was based on a two-day bench trial that gave Judge Cedarbaum the opportunity to examine all the evidence and assess the credibility of witness testimony. *Adonis*, 2009 WL 3030197, at *1. Indeed, though the defendants in *Adonis* filed a motion for summary judgment, Judge Cedarbaum expressly reserved decision on said motion and declined to rule on it prior to trial. Minute Entry for Proceedings Held Before Judge Miriam Goldman Cedarbaum, *Adonis v. Coleman*, No. 08–CV–1726 (S.D.N.Y. Dec. 10, 2008). Similarly, at this stage of the litigation, it would not be appropriate for the District Court to make premature factual determinations.

Viewing the facts in the light most favorable to the non-moving party, as the Court must in deciding a summary judgment motion, the Court finds that there is a genuine issue of material fact as to whether Defendants had probable cause to arrest plaintiff. If a jury were to credit Plaintiff's version of events, it could conclude that the police lacked probable cause to arrest Plaintiff. As such, Defendants' motion for summary judgment as to the claims for false arrest and false imprisonment is denied. *See also Douglas v. City of New York*, 595 F.Supp.2d 333, 340 (S.D.N.Y.2009) (Chin, J.) (accepting as true, for purposes of motion for summary judgment, plaintiff's allegation under oath

2. As noted above, Court Officer Ferrari agrees in his deposition that Plaintiff could not have been blocking the flow of pedestrian traffic based on his location at the time of his arrest. *Ferrari Dep. Tr.* at 17:3–24

that police officers arrested him in front of a dry cleaner on drug charges despite plaintiff having engaged in no illegal or suspicious activity).

### iii. Defendants' Qualified Immunity Defense Fails

██ Defendants' proffered defense of qualified immunity as to the claims for false arrest and false imprisonment similarly fails. To succeed on a qualified immunity defense, Defendants need not show the existence of actual probable cause to arrest, so long as they can show either that it was objectively reasonable for them to believe that probable cause existed or that reasonably competent officers could disagree on the existence of probable cause. *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir.2004). Defendants are not entitled to qualified immunity on a motion for summary judgment "if any reasonable trier of fact could find that the defendants' actions were objectively unreasonable." *Lennon*, 66 F.3d at 420. An officer's actions are objectively unreasonable if no reasonably competent officer would have acted the same way under similar circumstances. *Id.* at 420–21. Furthermore, on a motion for summary judgment as to a qualified immunity defense, the Court must view the facts in the light most favorable to the non-moving party. *Robison*, 821 F.2d at 921.

In this case, viewing the facts in the light most favorable to Plaintiff, the Court finds that if a reasonable jury were to credit Plaintiff's version of the facts, the jury could find that Defendants' actions were objectively unreasonable. Under Plaintiff's version, his arrest was entirely unprovoked. Under those circumstances, no reasonably competent officer would have acted in the same way. Defendants' motion for summary judgment as to the false arrest and false imprisonment claim on the basis of qualified immunity is there-fore denied. *See Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir.2004) (in ruling on the reasonableness of officers' actions, if there is a dispute as to the material facts, "the factual questions must be resolved by the factfinder").

### D. Excessive Force

#### i. Applicable Law

The Supreme Court has held that in the context of arrests, "claims that law enforcement officers have used excessive force ... should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In this case, the Court must first determine whether the facts, viewed in the light most favorable to the plaintiff, demonstrate that the use of force was not objectively reasonable. *Washpon v. Parr*, 561 F.Supp.2d 394, 406 (S.D.N.Y.2008) (Buchwald, J.) (citing *Cowan v. Breen*, 352 F.3d 756, 761 (2d Cir.2003)).

██ In deciding whether the amount of force used was reasonable, a reviewing court must consider the "totality of the circumstances faced by the officer on the scene," *Lennon*, 66 F.3d at 425, and assess whether the officers' actions were "objectively reasonable" in light of the facts and circumstances facing them, regardless of their underlying intent or motivation, *Graham*, 490 U.S. at 397, 109 S.Ct. 1865. This inquiry is fact specific and requires "balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir.2010). "In conducting that balancing, we are guided by consideration of at least three factors: (1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others,

and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham,* 490 U.S. at 396, 109 S.Ct. 1865; *Jones v. Parmley,* 465 F.3d 46, 61 (2d Cir.2006)).

■ To succeed on an excessive force claim, a plaintiff must also present sufficient evidence to establish that "the alleged use of force is 'objectively sufficiently serious or harmful enough' to be actionable." *Cunningham v. Rodriguez,* 01–CV–1123, 2002 WL 31654960, at *4 (S.D.N.Y. Nov. 22, 2002) (Chin, J.). "[T]he Second Circuit and district courts in the Circuit recognize the concept of 'de minimis' injury and, when the injury resulting from alleged excessive force falls into that category, the excessive force claim is dismissed." *Lemmo v. McKoy,* 08–CV–4264, 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011) (Dearie, J.). "Injuries held to be de minimis for purposes of defeating excessive force claims include short-term pain, swelling, and bruising, brief numbness from tight handcuffing, claims of minor discomfort from tight handcuffing, and two superficial scratches from a cut inside the mouth." *Id.* (citations omitted).

Nonetheless, courts in the Second Circuit have allowed plaintiffs to pursue excessive force claims even where the injury was not permanent or severe, where the force used was excessive and gratuitous. *See, e.g., id.* (denying motion for summary judgment where plaintiff alleged defendants twisted his thumbs while plaintiff was already handcuffed and secured inside a jail cell); *Davenport v. County of Suffolk,* 99–CV–3088, 2007 WL 608125 (E.D.N.Y. Feb. 23, 2007) (Bianco, J.) (denying motion for summary judgment where plaintiff alleged that defendant intentionally and unnecessarily hit plaintiff's head against police car during arrest). It is inappropriate for this Court to rule as a matter of law that prosecution of claims to recover for such minor injuries would necessarily be futile because a jury "may consider the lack of serious injury as evidence that the implemented force was not excessive, and weigh it against [a plaintiff's] testimony, but that does not mean that there are no circumstances under which [a plaintiff] can prevail." *Davenport,* 2007 WL 608125, at *11.

**ii. There Is a Genuine Issue of Material Fact as to What Amount of Force Defendants Used During Plaintiff's Arrest**

■ Following the reasoning in *Lemmo* and *Davenport,* and viewing the facts in the light most favorable to Plaintiff, the Court denies summary judgment on Plaintiff's excessive force claim against Lt. Prevete. Defendants argue that Lt. Prevete is entitled to summary judgment on this point because Lt. Prevete did not injure Plaintiff. *Defs.' Reply* at 7. Although Plaintiff does not address this point in his Opposition, Plaintiff has alleged that Lt. Prevete used unprovoked and unnecessary force against Plaintiff. According to Plaintiff, Lt. Prevete pushed Plaintiff and caused him to hit his head against the wall. *Am. Compl.,* at ¶ 20; *Pl.'s Decl.,* at ¶ 15; *Pl.'s Dep. Tr.* at 58:14–17. There is a genuine dispute as to what degree of force, if any, Lt. Prevete used against Plaintiff. If a jury were to credit Plaintiff's version of events and find that Plaintiff was calm and cooperative during the incident, it might find that Lt. Prevete's use of force was objectively unreasonable and hence excessive.

The Court also denies summary judgment on Plaintiff's excessive force claim against Court Officer Ferrari. According to Plaintiff, Court Officer Ferrari pulled Plaintiff's already handcuffed wrist toward Plaintiff's neck and then twisted Plaintiff's arm and body in the elevator, causing seri-

ous pain and injury that required a trip to the hospital and months of physical therapy. Indeed, Plaintiff claims that he continues to feel chronic pain in his neck and shoulders and has lost range of motion in his arms, neck, and shoulders.

Defendants object that the injuries allegedly inflicted by Court Officer Ferrari are *de minimis* and that what little medical evidence exists to support Plaintiff's claims is not indicative of serious injury or permanent disability. *Defs.' Mem.* at 18; *Defs.' Reply* at 7–8. The Court disagrees that the pain and injuries Plaintiff alleges are merely *de minimis*. The Second Circuit has "permitted [excessive force] claims to survive summary judgment where the only injury alleged is bruising." *Hayes v. New York City Police Dep't*, 212 Fed. Appx. 60, 62 (2d Cir.2007) (citing *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir.2004)). Plaintiff's alleged injuries go beyond mere bruising. Moreover, it is not for this Court to determine whether the injuries alleged—even assuming they are not permanent—are sufficient for a finding of excessive force; that is for a jury to decide. *See, e.g., Davenport,* 2007 WL 608125, at *11 (lack of serious injury may weigh against claim of excessive force, but does not necessarily defeat it).

### iii. Defendants' Qualified Immunity Defense Fails

██ The analysis above similarly compels the Court to reject Defendants' defense of qualified immunity for Plaintiff's excessive force claims. "[I]t is axiomatic that the right that plaintiff asserts—namely plaintiff's right under the Fourth Amendment to be free from excessive force—is clearly established." *Pooler v. Hempstead Police Dept.,* 897 F.Supp.2d 12, 29 (E.D.N.Y.2012) (Bianco, J.). Hence, the only question is whether it was objectively reasonable for Defendants to believe they were not violating Plaintiff's Fourth

Amendment rights during the course of Plaintiff's arrest. *Cooperstein v. Procida,* 00–CV–2642, 2001 WL 715831, at *3 (E.D.N.Y. June 4, 2001). "Where the circumstances are in dispute, and contrasting accounts ... present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity." *Mickle v. Morin,* 297 F.3d 114, 122 (2d Cir.2002) (quotation marks omitted).

Given the factual dispute as to the type and degree of force Defendants employed against Plaintiff, the Court is unable to conclude as a matter of law that it was objectively reasonable for Defendants to believe they were not violating Plaintiff's rights. If Plaintiff's version of the facts is accepted and all reasonable inferences are drawn in his favor, then Lt. Prevete's unprovoked pushing of Plaintiff into a wall was unreasonable under the circumstances because Plaintiff was not being loud or obstructive. Likewise, it was objectively unreasonable for Court Officer Ferrari to pull Plaintiff's handcuffed wrist towards his neck and roughly yank and twist Plaintiff's arm in the elevator if Plaintiff was secured and not resisting the arrest, as Plaintiff claims. Therefore, summary judgment on qualified immunity grounds is denied as to the excessive force claims against Defendants.

### E. Deprivation of Due Process

██ The Court grants summary judgment for Defendants with respect to Plaintiff's substantive due process claim. To support his due process claim, Plaintiff proffers the same set of facts supporting his claims for false arrest and excessive force. However, "it is the Fourth Amendment that provides constitutional protections against arrests without probable cause," as well as against excessive force

used before arraignment, not the Fourteenth Amendment. *Quinn v. City of Long Beach*, 08–CV–2736, 2010 WL 3893620, at *5 (E.D.N.Y. Sept. 15, 2010) (Feuerstein, J.); *see Lemmo*, 2011 WL 843974, at *4; *Hogan v. Buttofocco*, 07–CV–0731, 2009 WL 3165765, at *7 (N.D.N.Y. Sept. 28, 2009) (Mordue, J.) ("Because plaintiff's claim for denial of due process is thus characterized properly as one alleging the use of excessive force, the Court must dismiss the former and analyze the latter under the tenets of the Fourth Amendment."), *aff'd*, 379 Fed. Appx. 35 (2d Cir.2010).

Plaintiff alleges that Defendants arrested him without probable cause and that they used an unreasonable amount of force in doing so. Here, just as in *Quinn* and *Hogan*, Plaintiff's due process claim is properly characterized as one alleging false arrest and excessive force. "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham*, 490 U.S. at 386, 109 S.Ct. 1865. The Court has already considered Plaintiff's claims on this motion for summary judgment in the context of false arrest and excessive force. Hence, Plaintiff's substantive due process claim is dismissed.

### F. Denial of Equal Protection
#### i. Applicable Law

■ To state a claim for a violation of his right to equal protection, Plaintiff must allege that, "(1) compared with others similarly situated, plaintiff was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitu-

tional rights, or malicious or bad faith intent to injure a person." *Washpon*, 561 F.Supp.2d at 409 (quoting *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir.2004)). "A plaintiff generally must satisfy both elements to establish a claim of selective enforcement." *Id.* (quoting *LaTrieste Restaurant v. Village of Port Chester*, 188 F.3d 65, 70 (2d Cir.1999)).

#### ii. Plaintiff Has Not Raised a Triable Issue of Fact, and Summary Judgment for Defendants is Proper

■ Plaintiff's equal protection claim is dismissed. Plaintiff has failed to raise a triable issue of material fact with respect to this claim. The only allegations supporting Plaintiff's equal protection claim are that Lt. Prevete arrested Plaintiff rather than simply ask him to end his call and that Court Officer Ferrari called Plaintiff derogatory names in the elevator. *Pl.'s Opp'n to Defs.' Mot. for Summ. J.*, at 18. Even assuming that Plaintiff is correct that he was selectively treated compared with others similarly situated because Lt. Prevete usually does not arrest individuals who use their phones on the security line, Plaintiff has not asserted any basis for such selective treatment, let alone an impermissible consideration such as race, religion, or malicious intent to injure a person. While calling Plaintiff "a motherfucker" and telling him to "shut the fuck up" are offensive, such statements do not suggest that Court Officer Ferrari selectively treated Plaintiff based on an impermissible consideration of any protected class to which Plaintiff may or not belong. Accordingly, the Court grants the motion for summary judgment with respect to Plaintiff's equal protection claim.

### III. Conclusion

Defendants' motion for summary judgment is granted with respect to Plaintiff's

equal protection and due process claims. The motion is denied in all other respects. The case shall proceed to trial on the § 1983 claims for false arrest, false imprisonment, and excessive force.

*SO ORDERED.*

