**Getro MILFORT, Plaintiff,**

v.

**Court Officer Felix PREVETE, Court Officer Christopher Ferrari, Defendants.**

**No. 10–cv–4467.**

United States District Court, E.D. New York.

Signed March 14, 2014.

Gregory Vincent Esposito, Law Office of Gregory Esposito PLLC, Paul Hale, Paul Hale, Attorney at Law, Brooklyn, NY, for Plaintiff.

Roberta Lynne Martin, Charles Fernando Sanders, Michael John Siudzinski, New York State Office of the Attorney General, New York, NY, for Defendants.

*MEMORANDUM AND ORDER*

WILLIAM F. KUNTZ, II, District Judge.

Plaintiff Getro Milfort ("Plaintiff") brought this 42 U.S.C. § 1983 action against defendants Felix Prevete ("Prevete") and Christopher Ferrari ("Ferrari") (collectively "Defendants"), seeking redress from Plaintiff's arrest for disorderly conduct. Plaintiff sought recovery for false arrest, false imprisonment, excessive force, denial of equal protection, and deprivation of due process. At trial held on June 10–12, 2013, the jury found Defendant Prevete liable for false arrest, and awarded a judgment of $1 in nominal damages and $40,000 in punitive damages. Defendant Prevete now moves for judgment as a matter of law, arguing that 1) the jury verdict on false arrest should be vacated on the grounds of qualified immunity and, in the alternative, that 2) the punitive damages award should be vacated or remitted as a matter of law.

## I. Background

The Court assumes familiarity with the underlying facts and procedural history of this case, and will only briefly recount the relevant facts here. According to Plaintiff Milfort, he was waiting in a security line at the Civil Court for Kings County in Brooklyn, New York, when his cell phone rang. (*See* Plaintiff's Opposition, Dkt. 81 ("Opp.") at 4–5 (citing trial transcript)). Plaintiff answered his phone while still waiting in line, and refused to terminate the call despite Defendant Lieutenant Prevete's request. (*Id.* at 5). Defendant proceeded to take the phone from Plaintiff, terminate the call, and shove the phone back in Plaintiff's pocket. (*Id.*). Following a heated dispute between the two, Defendant ordered Plaintiff's arrest, during which time Milfort was pushed against a wall, injured, and held for one and a half hours before being released. (*Id.* at 6). Prevete's role in the arrest and criminal prosecution included the acts of writing the summons and the Unusual Occurrence Report, falsifying documents, and lying to commence a criminal prosecution against Milfort. (*Id.*).

Prior to trial, Defendants moved for summary judgment, which this Court denied in part and granted in part. *See Milfort v. Prevete*, 922 F.Supp.2d 398 (E.D.N.Y.2013). The Court agreed that Plaintiff's equal protection and due process claims could not stand, but denied Defendants' motion with respect to the § 1983

claims of false arrest, false imprisonment, and excessive force. *Id.* at 410–11. The Court also denied Defendants' request for qualified immunity. *Id.* at 407.

On June 10, 2013, the jury trial commenced. After a three day trial, the jury found no liability against Defendant Ferrari for either false arrest or excessive force, and no liability for excessive force against Defendant Prevete. (Dkt. 69–70). However, the jury found Defendant Prevete liable for false arrest, and on that claim, awarded $0 in compensatory damages, $1 in nominal damages, and $40,000 in punitive damages. (Dkt. 70).

Defendant Prevete has moved for judgment as a matter of law pursuant to Fed. R.Civ.P. 50. (Dkt. 76–5, "Mot."). He contends that: 1) with respect to liability and qualified immunity, Plaintiff failed to prove that Prevete acted unreasonably, and 2) with respect to punitive damages, the evidence at trial did not establish that Prevete acted in a malicious or wanton manner. Plaintiff opposes the motion, arguing that the jury rejected Defendants' testimony in declining to find that qualified immunity applied, and that Prevete's serious misconduct justified the $40,000 punitive award. For the reasons outlined below, the Court agrees with Plaintiff that the jury award of liability on false arrest should stand. However, Defendant's excessiveness arguments with regards to the punitive award are well taken, and the Court will remit the award to $5,000.

**II. Discussion**

When evaluating a motion for judgment as a matter of law, a court is required to draw all reasonable inferences in favor of the non-moving party. *Zellner v. Summerlin,* 494 F.3d 344, 370 (2d Cir. 2007). The court "may not make credibility determinations or weigh the evidence," because those are "jury functions, not

those of a judge." *Id.* Accordingly, a court may grant a motion for judgment as a matter of law "only if it can conclude that, with credibility assessments made against the moving party and all inferences drawn against the moving party, a reasonable juror would have been *compelled* to accept the view of the moving party." *Id.* at 370–71 (emphasis in original). This "high bar" may be met when there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture" or "there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it." *Advance Pharm., Inc. v. United States,* 391 F.3d 377, 390 (2d Cir. 2004); *Lavin–McEleney v. Marist College,* 239 F.3d 476, 479–80 (2d Cir.2001).

**A. False Arrest & Qualified Immunity**

Defendant Prevete's sole attack on the jury's finding of liability is that he was entitled to qualified immunity. This Court has already rejected Defendant's request for qualified immunity once, *Milfort,* 922 F.Supp.2d at 407, and nothing convinces the Court that its prior decision was in error.

Qualified immunity applies when a government actor's conduct did not violate a clearly established right, or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights. *Mandell v. Cnty. Of Suffolk,* 316 F.3d 368, 385 (2d Cir.2003). Where, as here, the right and its violation are already established, qualified immunity turns only on whether the probable cause determination (e.g., whether an officer had knowledge or reasonably trustworthy information warranting the belief that the person has committed a

crime) was objectively reasonable. *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir.2007); *see Weyant v. Okst*, 101 F.3d 845, 852, 858 (2d Cir.1996) (the availability of the "arguable probable cause" standard depends on whether a reasonable officer could have believed his action to be lawful, in light of clearly established law and the information he possessed). For purposes of false arrest, qualified immunity applies if either 1) the arresting officer's belief that probable cause existed was objectively reasonable or 2) officers of reasonable competence could disagree on whether the test for probable cause was met. *See Walczyk v. Rio*, 496 F.3d 139, 163 (2d Cir.2007); *accord Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir.2004). Notably, this "arguable probable cause" standard does not mean "almost probable cause": if officers of reasonable competence would have to agree that the information possessed by the officer at the time of the arrest did not add up to probable cause, "the fact that it came close does not immunize the officer." *Jenkins*, 478 F.3d at 87.

██ Entitlement to qualified immunity presents a question of law. *See Stephenson v. Doe*, 332 F.3d 68, 80–81 (2d Cir.2003). When the facts underlying a claim of qualified immunity are disputed, it is the defendant's responsibility that the jury be asked the relevant factual questions. *See Zellner*, 494 F.3d at 368; *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 764–65 (2d Cir.2003). Here, because Defendant did not request that the Court give the jury special interrogatories on the factual issues underlying qualified immunity, (*see* Dkt. 60. at 49–55), "he is not entitled to have the court, in lieu of the jury, make the needed factual finding." *Zellner*, 494 F.3d at 368. The resulting lack of a sufficient factual record may, on its own, preclude the Court from making the legal determination of whether the Defendant is entitled to qualified immunity. *See Kerman v. City of New York*, 374 F.3d 93, 120 (2d Cir.2004) (reversing judgment as a matter of law because defendant had failed to ask that the jury be given interrogatories specific enough to resolve the material factual disputes); *Ellis v. La Vecchia*, 567 F.Supp.2d 601, 609 (S.D.N.Y. 2008) (Swain, J.) ("[B]ecause Defendant failed to request special interrogatories going to the factual issues relating to Plaintiff's malicious prosecution claim, the record is insufficient to permit the Court to make a finding in Defendant's favor on the qualified immunity issue as a matter of law under Rule 50."). However, because sufficient material facts have been established, the Court will recount the factors compelling its conclusion that Prevete was not entitled to qualified immunity.

██ *First,* the facts presented at trial proved that no "arguable probable cause" existed. Pursuant to N.Y. Penal Law § 240.20, the statute for which Plaintiff was arrested, a person is guilty of disorderly conduct "when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . he makes unreasonable noise [or] disturbs any lawful assembly or meeting of persons [or] obstructs vehicular or pedestrian traffic [or] creates a hazardous or physically offensive condition by any act which serves no legitimate purpose." Under this statute, an unreasonable noise is a noise that a reasonable person, under the circumstances, would not tolerate. *Provost v. City of Newburgh*, 262 F.3d 146, 159 (2d Cir.2001). Obstructing pedestrian traffic is "something more than [a] temporary inconvenience" caused by the blocking of foot traffic, *Jones v. Parmley*, 465 F.3d 46, 59 (2d Cir.2006), and a physically hazardous or offensive condition includes activities such as stink bombs, strewing garbage

in public passages, or other annoyances specifically directed at the public. *People v. Cooke,* 152 Misc.2d 311, 314, 578 N.Y.S.2d 76 (Justice Ct. of Vill. of South Nyack Oct. 18, 1991). As indicated by the statutory text, the offense requires that an individual intentionally create the public disturbance or at least do so recklessly. *See Wood v. Town of East Hampton,* No. 08–cv–4197, 2014 WL 60087, at *11 (E.D.N.Y. Jan. 7, 2014) (Hurley, J.).

Defendant argues that Plaintiff's arrest was justified by Plaintiffs failure to cease his phone call, his obstruction of the security line area, and his "loud and belligerent" discussion with Defendant. (Mot. at 11). Evidence at trial, however, demonstrated otherwise. Probable cause for arrest is based on the totality of the circumstances, *Illinois v. Gates,* 462 U.S. 213, 230–31, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and here, the totality of the circumstances did not indicate that a reasonable officer could believe that the disorderly conduct arrest was lawful. As a preliminary matter, no reasonable officer would believe that Plaintiff acted intentionally or recklessly. The evidence presented at trial demonstrated that Plaintiff was on his phone for approximately 15 seconds, while standing in a portion of the line in which a person would have been permitted to speak on the phone. (Opp. at 4). People were able to move around Plaintiff, and it was only after Defendant engaged in an argument with Plaintiff that the line was blocked. (Trial Tr. at 243:17–21). After the dispute with Defendant, Plaintiff continued to proceed through the line and started putting his belongings in the security bucket, per normal procedure. (Opp. at 4). Plaintiff complained to Defendant about the phone incident, but not to such intensity that other officers were alarmed. (*Id.*). These actions, taken as a whole, did not evince intent to cause public inconvenience, annoyance or alarm, or recklessness toward the same. *See* N.Y. Penal Law § 240.20.

Moreover, a reasonable officer would not find that an arrest was lawful based on the substantive prongs of the disorderly conduct statute. Before the dispute, Plaintiff was not actually blocking the flow of traffic; Plaintiff's discussion with Defendant was at least partially provoked by Defendant's own actions; and Plaintiff did not use profanity. (Opp. at 5–6). The trial testimony indicated that Plaintiff's voice was elevated due to the noise level of the lobby, and no other persons made any noise or disturbance complaint resulting from Plaintiff's actions except for Defendant. (*Id.*). Defendant may try to emphasize Plaintiff's disregard of a lawful order to turn off his phone, but evidence at trial demonstrated that the arrest was provoked by the argument, not by Plaintiff's refusal to hang up his phone. (*Id.*). The totality of the circumstances makes it apparent that an arrest for failure to comply with an order regarding the cell phone would not have been justified. (*See id.* at 4–6).

Defendant's cited authority is factually distinguishable. In *Cooperstein v. Procida,* on summary judgment, the plaintiff admitted that she walked away from the defendant officer while he was searching her bag, and despite returning after the defendant told her to return, she then walked away again, preventing the officer from performing his security function. No. 00–cv–2642, 2001 WL 715831, at *4 (E.D.N.Y. June 4, 2001) (Mishler, J.). In *Posr v. Killackey,* another summary judgment case, the plaintiff repeatedly and persistently attempted to gain entry to a crowded courthouse through physical force, after being ejected for bringing a camera into a courtroom. 01–cv–2320, 2003 WL 22962191, at *2, *4 (S.D.N.Y. Dec. 17,

2003) (Swain, J.). Both of those cases presented circumstances in which the violation of the disorderly conduct statute was far more blatant, persistent, and disruptive of the public function of the courthouse than the circumstances here—e.g., a 15 second phone call, no meaningful delay in the security line arising from Plaintiff's pre-argument actions, and a conversation, largely provoked by Defendant himself, that did not reach yelling levels. With the benefit of a full trial in this case, the Court finds that the circumstances of Plaintiff's arrest simply did not support a finding of objective probable cause.

**Second,** the jury verdict confirms that qualified immunity is unavailable to the defendants here.[1] *See Milfort,* 922 F.Supp.2d at 407 ("[T]he Court finds that if a reasonable jury were to credit Plaintiff's version of the facts, the jury could find that Defendants' actions were objectively unreasonable."). Indeed, the merits of Plaintiff's claim and the Defendant's claim of qualified immunity "both [rode] on whether the jury believe[d] the plaintiff or the defendant." *Robertson v. Sullivan,* No. 07–cv–1416, 2010 WL 1930658, at *2 (E.D.N.Y. May 12, 2010) (Gleeson, J.); *see also Adedeji v. Hoder,* 935 F.Supp.2d 557, 569–70 (E.D.N.Y.2013) (Amon, C.J.) (rejecting qualified immunity and noting that "[t]he same evidence that support[ed] the jury's finding of excessive force . . . depicts a different factual scenario . . . that

makes clear that the nudge was, for substantially the same reasons the jury determined it was objectively unreasonable, clearly unlawful"); *Morse v. Fusto,* No. 07–cv–479, 2013 WL 4647603, at *11 (E.D.N.Y. Aug. 29, 2013) (Amon, C.J.) (rejecting claim for qualified immunity because the jury verdict meant that the jury "necessarily rejected" defendants' contentions). As in *Robertson,* the jury's verdict here indicates that the jury credited Plaintiff's, rather than Defendants', testimony, which indicated that Plaintiff was doing nothing wrong before Defendant engaged in the dispute with him. *See* 2010 WL 1930658, at *2 (because "[t]he jury's verdicts rejected [defendants' claims regarding false arrest] . . . the defendants [were] not entitled to qualified immunity").[2] And as in *Robertson,* the specific facts of the case render qualified immunity inapplicable.

**Finally,** the jury's award of punitive damages makes Defendant's qualified immunity claim "especially hollow." *Id.,* at *4 (cited in *Adedeji,* 935 F.Supp.2d at 570–71). An award of punitive damages is merited only when a defendant acted "maliciously or wantonly," and the jury's finding that such an award was appropriate— to the tune of $40,000, no less—provides still further reason to deny the Defendant's claim for qualified immunity. *Id.* "The jury having found that each defen-

---

1. The Court acknowledges that the test for the reasonableness of an arrest is a distinct inquiry from the objective reasonableness test for qualified immunity, *see Oliveira v. Mayer,* 23 F.3d 642, 648–49 (2d Cir.1994), but agrees that the determinations "frequently coalesce[,]" *Robertson v. Sullivan,* No 07–cv–1416 2010 WL 1930658, at *2 (E.D.N.Y. May 12, 2010) (Gleeson, J.).

2. This case diverges slightly from *Robertson,* because there, the false arrest was based on either a) reasonable suspicion that the plaintiff was in possession of marijuana, which

was followed by the plaintiff's fleeing, or b) that probable cause existed because the officers perceived that the plaintiff was smoking marijuana. 2010 WL 1930658, at *2. Here, the finding of false arrest was based on probable cause for the commission of disorderly conduct. But just as in *Robertson,* the jury's finding of liability for false arrest was predicated on their belief that Plaintiff's version of the facts was the more accurate one, and was likely buttressed by the numerous inconsistencies in the Defendants' testimony.

dant deserved to be punished for engaging in such behavior, it is difficult to fathom the defendants' post-verdict claim that I should find them immune on the ground that [they] acted in an objectively reasonable manner." *Id.*

For the foregoing reasons, Defendant's request for qualified immunity is denied.

## B. Punitive Damages

Defendant Prevete argues that the $40,000 punitive damages award should be vacated because a) there was no evidence that Prevete acted with evil motive or was callously indifferent to Plaintiffs rights and b) the punitive damages award was grossly excessive and exceeded the constitutional limit. (Mot. at 12–23). The Court finds the first argument meritless, but agrees with Defendant that the $40,000 punitive award was excessive.

### 1. Evidence of Evil Motive or Callous Indifference

Punitive damages are meant to "punish the defendant for his willful or malicious conduct and to deter others from similar behavior." *Sulkowska v. City of New York,* 129 F.Supp.2d 274, 309 (S.D.N.Y.2001) (Schwartz, J.) (citing *Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 307 n. 9, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986)). "Punitive damages are available in a § 1983 action when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Lee v. Edwards,* 101 F.3d 805, 808 (2d Cir.1996) (quoting *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)). "The fact that the constitutional violation does not warrant an award of compensatory damages is not a basis for denying an award of punitive damages." *New Windsor Volunteer Ambulance Corps, Inc. v.*

*Meyers,* 442 F.3d 101, 121 (2d Cir.2006) (internal citations omitted). However, "to be entitled to an award of punitive damages, a claimant must show a positive element of conscious wrongdoing." *Id.* (quoting *Kolstad v. American Denial Ass'n,* 527 U.S. 526, 538, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999)) (internal quotations omitted).

Defendant claims that there was no evidence showing that Defendant's decision to arrest Plaintiff was motivated either by evil motive or intent, and that nothing in the record supported an inference that Defendant had any reason to harbor a personal animus toward Plaintiff. (Mot. at 13–17). Defendant also argues that nothing in the record reflected that Defendant had the subjective intent to violate Plaintiff's rights, and that Defendant believed he was "taking the necessary measures to carry out his duty as a court officer when he arrested Mr. Milfort for disorderly conduct." (*Id.* at 16). As support for his argument, Defendant simply recounts the facts of the arrest and states that "[i]t was clear from the record that Mr. Milfort was arrested not because Lt. Prevete had harbored personal animus toward him [but because] in his mind that was the necessary and appropriate measure to take[.]" (*Id.* at 15). Defendant also proclaims that "[n]ever once did Lt. Prevete express any animosity toward Mr. Milfort either on the stand or during the arrest," and that "[t]here was no evidence to suggest that anything other than normal procedure was employed during the arrest." (*Id.* at 16).

Defendant's attempts to reinterpret the facts of trial are unfounded. As demonstrated at trial and credited by the jury, the whole series of actions—which included taking the phone out of Plaintiff's hand, closing it, and shoving it into Plaintiff's pocket, engaging a heated dispute with Plaintiff, giving the order to arrest Plaintiff, and filling out the documents for

Plaintiff's false arrest—plainly indicated that Defendant had ill motive or intent, or at the very least, reckless or callous indifference to Plaintiff's federally protected rights. (*See* Opp. at 4–6). This finding is supported by other factors, namely that none of the other officers had ever seen an officer take a phone from a civilian, close it, and place it back in the civilian's pocket, (*id.* at 7), and that Defendant's testimony on the incident was often inconsistent. (*Id.* at 14). Accordingly, the jury's finding that punitive damages were appropriate will not be disturbed. *See Matthews v. City of New York*, No. 02–cv–715, 2006 WL 842392, at *11 (E.D.N.Y. Mar. 27, 2006) (Sifton, J.) (denying motion to vacate jury award because jury "might have found, and was entitled to find" that arrest was done with callous disregard or indifference to the plaintiff's rights).

### 2. *Remittitur*

Defendant's final request is that the $40,000 punitive award be "substantially reduced" because it is excessive and exceeds the constitutional limit. The Court agrees.

 Punitive damages are by nature "speculative, arbitrary approximations," and "[n]o objective standard exists that justifies the award of one amount, as opposed to another, to punish a tortfeasor appropriately for his misconduct." *Payne v. Jones*, 711 F.3d 85, 93 (2d Cir.2013). However, courts recognize that the legal system has an obligation to ensure awards are fair, reasonable, proportional, and predictable, and that excessive punitive awards have the potential to inflict great harm on the defendant and society. *Id.* at 93–95. These concerns are emphasized when a plaintiff is fully compensated, and when the burden does not fall on the wrongdoer himself, but on the taxpaying public. *Id.* at 95.

 With these policy considerations in mind, a district court may modify a punitive damage award when the amount is so high as to "shock the judicial conscience and constitute a denial of justice." *Id.* at 97 (citing *Zarcone v. Perry*, 572 F.2d 52, 56 (2d Cir.1978)). The required excessiveness for reducing an award is somewhat "less extreme than 'grossly excessive,'" with a resulting "increased judicial readiness to curtail any excessiveness." *Id.* at 97 (explaining that the Supreme Court applied the "grossly excessive" standard in *BMW of N. Am. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) because it had no authority to overturn a state court judgment absent a due process violation). To determine whether a punitive damage award may be sustained, a court weighs 1) the degree of reprehensibility of the tortious conduct; 2) the ratio of punitive damages to compensatory damages; and 3) the difference between the remedy and penalties authorized in comparable cases. *Id.* at 101 (citing *Gore*, 517 U.S. at 574–5, 116 S.Ct. 1589). The Court will consider each of these factors in turn.

#### a. *Reprehensibility*

 Reprehensibility is "perhaps the most important indicium of the reasonableness of a punitive damages award." *Id.* at 101 (citing *Gore*, 517 U.S. at 575, 116 S.Ct. 1589). "This guidepost is particularly important and useful because punitive damages are intended to punish, and the severity of punishment, as in the case of criminal punishments, should vary with the degree of the reprehensibility of the conduct being punished." *Payne*, 711 F.3d at 101.

 Reprehensibility requires consideration of whether the Defendant engaged in violent conduct; acted with malice or deceit; and engaged in repeated acts of

misconduct. *See Gore,* 517 U.S. at 576–77, 116 S.Ct. 1589. Defendant Prevete's conduct here was unquestionably reprehensible. His decision to provoke a dispute and cause Plaintiff to be arrested "set into motion the coercive apparatus of the state, which is ultimately rooted in a willingness to use force." *Lee,* 101 F.3d at 810 (noting that even though the threat of force was attenuated and short-lived, a jury could properly recognize it and conclude that malicious prosecution is egregious and reprehensible). Further, Defendant's snatching of Plaintiff's phone, provoking of a heated argument with Plaintiff, and concerted effort to arrest Plaintiff on an unfounded charge rather clearly demonstrated that Defendant acted with malice and deceit.

Nonetheless, the Court acknowledges that some mitigating circumstances existed. The courthouse line was crowded (with approximately 60–70 people in the lobby, and hundreds more trying to enter), and it is undisputed that Plaintiff resisted Defendant's repeated requests to terminate the phone conversation. (Mot. at 4). Plaintiff also engaged in the argument with Defendant, even if it was largely provoked by Defendant. (Mot. at 5). Furthermore, the record does not indicate that the Defendant engaged in repeated acts of similar misconduct. Given these findings, an award of $40,000, while partially substantiated, exceeds reasonable bounds.

### b. Relationship between Harm and Punitive Damages Award

To evaluate the second *Gore* guidepost, a court ascertains whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct, as well as the harm that actually occurred. *Gore,* 517 U.S. at 580–81, 116 S.Ct. 1589.

At first pass, the disparity between a $40,000 punitive damages award, a $1 nominal damages award, and a $0 compensatory award appears unbalanced. However, "in cases of very small injury but very reprehensible conduct, the appropriate ratios can be very high," *Payne,* 711 F.3d at 102, and "in a § 1983 case in which the compensatory damages are nominal . . . the use of a multiplier to assess punitive damages is not the best tool." *Lee,* 101 F.3d at 811. In *Lee,* for example, the Second Circuit awarded $75,000 in punitive damages in conjunction with $1 in nominal damages. *See* 101 F.3d at 813 (cited with approval in *Payne,* 711 F.3d at 102). "[T]he ratio was huge at 75,000 to 1," but that was an "appropriate ratio on those facts" because "the large size of the ratio ha[d] no necessary bearing on the appropriateness of the amount of punitive damages." *Payne,* 711 F.3d at 102.

That analysis squarely applies here. As discussed previously, the reprehensibility of Defendant's conduct was substantial. The fact that the jury found that no compensatory damages were justified does not nullify their finding that punitive damages were. *See Cush–Crawford v. Adchem Corp.,* 271 F.3d 352, 359 (2d Cir.2001) (upholding $100,000 in punitive damages on Title VII claim even though no compensatory damages were awarded because "[t]here is some unseemliness for a defendant who engages in malicious or reckless violations of legal duty to escape either the punitive or deterrent goal of punitive damages merely because either good fortune or a plaintiff's unusual strength or resilience protected the plaintiff from suffering harm."). Defendant's conduct was deserving of punishment, not merely because of any physical or emotional harm done to Plaintiff, but because the conduct itself was malicious and entailed an abuse of state power. Accordingly, though cogni-

zant of the exceptionally high ratios of this case, the Court will not rely on this factor alone to remit the damages award.

### c. Civil and Criminal Penalties Available for Defendant's Conduct

 The third *Gore* guidepost requires a court to compare the punitive damages to the criminal and civil penalties available for comparable misconduct. *Gore*, 517 U.S. at 583–84, 116 S.Ct. 1589. When there are no comparable civil or criminal penalties, a court may compare the award to awards upheld in other cases. *Alla v. Verkay*, No. 11–cv–892, 2013 WL 5815796, at *21 (E.D.N.Y. Oct. 30, 2013) (Block, J.).

Plaintiff argues that the Court should look at the numerous crimes that Defendant might have been charged with, including false reporting, harassment, aggravated harassment, petit larceny, assault, robbery, and attempt to commit a crime. (Opp. at 23). The Court agrees that the comparable criminal crimes justify some form of punitive award here. However, the Court is also compelled to compare the misconduct in this case to awards in similar civil cases.

In cases of police misconduct, acceptable awards often reach $100,000, *Payne*, 711 F.3d at 105, or even $150,000, *see Alla*, 2013 WL 5815796, at *21. However, the cases awarding punitive damages of those levels arise out of much more egregious police misconduct than occurred here. In *Payne*, the plaintiff was a mentally handicapped patient who was punched in the face and neck seven to ten times and kneed in the back several times, 711 F.3d at 88, while in *Alla*, the plaintiff was punched in the face, severely injured, falsely arrested, and held in custody for approximately nine hours before being released. 2013 WL 5815796, at *2–6. In *DiSorbo v. Hoy*, the Second Circuit reduced an award of $1.275 million to $75,000

where the plaintiff's rejection of the defendant's advances caused him to arrest her, before throwing her against a wall and then to the ground. 343 F.3d 172, 189 (2d Cir.2003). Finally, in *King v. Macri*, the Second Circuit weighed punitive damages of $175,000 and $75,000 against two officers who punched and used a choke-hold against the plaintiff, before he was arrested and held for two months on criminal charges of resisting arrest and disorderly conduct. 993 F.2d 294, 299 (2d Cir.1993). The Second Circuit reduced those figures to $100,000 and $50,000, respectively, *id.* at 299, which adjusted for inflation, would be approximately $160,000 and $80,000.

These cases convince the Court that the jury's award of $40,000 was excessive. Plaintiff, though unjustly targeted and falsely arrested, was not subject to excessive force (as found by the jury), was not damaged in a way that necessitated compensatory damages, and was held in custody for the relatively short time of one and a half hours. Accordingly, the Court will remit the punitive damages award to $5,000. This sum reflects the Court's determination that a substantive amount of punitive damages are warranted, but that the particular facts of this case did not reach the egregiousness necessary to support an award in the multiple tens of thousands. *See Provost*, 262 F.3d at 164 (2001 case noting in dicta that: "the $10,000 punitive damages sum approaches the limits of what we would deem consistent with constitutional constraints," where the plaintiff was arrested for disorderly conduct and held for two and a half hours); *Sulkowska*, 129 F.Supp.2d at 309 (assigning $7,500 in punitive damages for false arrest and malicious prosecution).

If the Plaintiff does not wish to accept the reduced $5,000 award, a new trial on damages shall be held. *See Vasbinder v. Scott*, 976 F.2d 118, 122 (2d Cir.1992) ("[A]

court may not simply reduce an award of punitive damages, but must offer the plaintiff the option of a new trial on that issue.") (citing *Phelan v. Local 305 of the United Ass'n of Journeymen and Apprentices of the Plumbing & Pipefitting Indus.*, 973 F.2d 1050, 1064 (2d Cir.1992)); *accord Thomas v. iStar Fin. Inc.*, 652 F.3d 141, 146 (2d Cir.2011).

## III. Conclusion

Defendant's motion for judgment as a matter of law based on qualified immunity is DENIED. Defendant's motion to vacate the punitive damages award is DENIED as to the sufficiency of the evidence and GRANTED as to excessiveness. If the Plaintiff chooses not to accept the remitted punitive damages award of $5,000, a new trial shall be held on that issue.

*SO ORDERED*